## Smith, Mayor of Erie, *versus* Commonwealth *ex rel.* Dillon.

*Authority of Assistant Law Judges.—Mandamus.—Petition for, when insufficient.—Issues of Fact to be decided before Judgment entered.— Salaries should be fixed by law.*

1. An assistant law judge of the Court of Common Pleas, required to be learned in the law and vested with the same authority as the president judge, has power to try a *mandamus* against a city officer to compel his performance of an official duty, notwithstanding the Mandamus Law requires the presence of the president judge.

2. Where the relator presented a petition, averring that the city councils had passed an ordinance to pay him $50, to apply to his services as high constable, and that the mayor, in violation of his duty, refused to sign a warrant on the treasurer therefor, but did not set forth the law or ordinance imposing that duty on the mayor, or show it on the trial of the issues of fact raised, or on writ of error, it was *held:* That he had shown no ground for the *mandamus* asked for in his petition, and that it was error in the court below to award a peremptory *mandamus* thereon.

3. Where the relator averred that he was duly elected and qualified as high constable, which the respondent denied, because he had not given security as required by Act 8th April 1833, § 15, the issue of fact thus raised should have been decided by a jury; and, as it was not, judgment should not have been entered against the respondent.

4. As a general principle, an ordinance by city councils to pay a municipal officer his salary, should be founded upon another ordinance fixing the salary of the office: for public officers ought to have a fixed compensation, so as not to be dependent upon councils, who are but trustees of public functions, and ought not to vote money, as matter of grace or favour.

Error to the Common Pleas of *Erie county*.

This was an application for a *mandamus*, in the name of The Commonwealth *ex. rel.* Thomas Dillon against Sherburn Smith, Mayor of the City of Erie.

The petition of the relator, which was filed September 27th 1860, was addressed "to the Judges of the Court of Common Pleas of Erie county," and set forth: "That on the third Friday in March, A. D. 1860, he was duly elected to the office of high constable of the city of Erie, by the qualified electors of said city, and duly qualified and entered upon the duties of said office; that on the 13th day of August, A. D. 1860, the Select and Common Councils of the city of Erie, at a regular meeting of said councils, passed a resolution to pay to your petitioner the sum of ' $50, to apply on his services as high constable,' which resolution was duly presented to S. Smith, Esq., the duly elected and qualified mayor of the city of Erie, for his approval; that on 20th day of August, A. D. 1860, the mayor aforesaid returned said resolution to the council in which it originated, with a message vetoing the same; that on the 27th day of August, A. D. 1860, the said veto came up for consideration, and, on the

[Smith, Mayor, &c., *v.* Commonwealth *ex rel.* Dillon.]

question, 'Shall said resolution pass notwithstanding the veto of the mayor?' the same was duly and legally passed by both branches of said council, over the veto of the mayor, and thus duly became a law of the city of Erie aforesaid, of all of which the said mayor had notice on the day aforesaid; that on the 3d day of September, A. D. 1860, a warrant, in pursuance of said resolution, was duly and legally drawn on the treasurer of the city of Erie aforesaid, in favour of the said Thomas Dillon, for the sum of $50, which warrant was on the same day presented to the mayor aforesaid for his signature, in order that the said Thomas Dillon might draw the money thereon; that it was and is the duty of the said mayor to affix his signature to said warrant, and that without such signature the said Dillon is unable to draw any money on said warrant; that the said mayor, in defiance of his duty in that behalf, has hitherto neglected and refused, and still neglects and refuses to sign said warrant, whereby the said Thomas Dillon is grievously injured, and is without any specific legal remedy therefor." He therefore prayed that a *mandamus* be issued to the said S. Smith, mayor aforesaid, commanding him to sign said warrant, or that a rule on the said S. Smith be granted to show cause why a *mandamus* should not be issued for the purposes aforesaid.

The petition was verified by affidavit, filed, and a rule granted to show cause why a *mandamus* should not issue, returnable October 10th 1860. This rule was served, and, on the 11th of October 1860, a *mandamus* was awarded, but "not to be executed if answer be filed within ten days."

On the 20th of October 1860, the answer of the respondent was filed, in which the passage of the resolution of August 13th 1860, and the veto by the mayor, were admitted. But the respondent excepted to the jurisdiction of the court in the premises, because the petition was presented in court, and acted on, when the Hon. David Derickson, who is only "an additional law judge," and not the president judge of the court, was presiding; averring that, under the laws of Pennsylvania, none but the president judge of the Common Pleas alone, or with his associates, has power to issue such writ.

The answer averred further that the petition was defective and insufficient in law, inasmuch as it only set forth the passage of the resolution authorizing the payment of $50 to the relator on his services as high constable, without also setting forth that Sherburn Smith, mayor of Erie, was authorized or directed thereby to issue his warrant to the treasurer in favour of the relator for that sum.

The answer further averred that the respondent is not the fiscal agent of the city of Erie, neither has he the custody or control of the funds of the said city, but the said funds are in custody

[Smith, Mayor, &c., *v.* Commonwealth *ex rel.* Dillon.]

of the treasurer thereof, duly elected and qualified in accordance with the laws of the Commonwealth and the ordinances of the city of Erie, and this respondent does not know of any law of the Commonwealth or ordinances of the city requiring him to issue his warrant upon the treasurer for any amount, unless specially and legally authorized and directed by the councils, but that such claims, duly passed by councils, without any specific directions, are payable by the treasurer, out of funds belonging to the city, without the intervention of the mayor; wherefore, he prays judgment, &c."

"That said bill of complaint is insufficient in law, because it asks relief by writ of *mandamus* for causes and reasons which, if true, to wit, the neglect of the mayor of the city to discharge his official duty, a complete and adequate legal remedy is provided by law, by indictment in the Court of Quarter Sessions for the county of Erie; and hence, as respondent is advised, a *mandamus* can in no event. legally issue against the respondent for the causes alleged and set forth."

That "the said bill of complaint is not sufficient in law, because there is no law either authorizing or requiring the mayor of the city of Erie to issue his warrant to the treasurer for the payment of the said $50 to Thomas Dillon, there being no mandatory provision in the law to that effect. That the resolution to pay Thomas Dillon was passed without warrant or authority of law, and could not therefore become a law of the city of Erie, and could be no justification or authority to respondent to issue a warrant therefor; but the same was in violation of law, and consequently a nullity, because said resolution purported to be a payment to said Thomas Dillon on services as high constable of the city of Erie, when in truth and fact said Thomas Dillon was not duly and legally qualified as high constable of said city, he not having given security to faithfully discharge the duties of high constable and pay over moneys, &c., as the laws of the Commonwealth require he should before entering upon the duties of high constable; and any law, ordinance, or resolution to pay him any sum as high constable is consequently a nullity. That even if said complainant was legally acting as high constable, the law fixes the mode and amount of compensation for services as high constable in shape of fees, and points out the method of collecting the same, to which this complainant has not yet resorted. That the councils not having previously fixed his salary, as provided for and required by the Act of Assembly creating the office, he was not in law entitled to any specific compensation, or any sum whatever, as the act of fixing the salary must be precedent to the right of the high constable to any compensation except the fees provided in the act; and any law, ordinance, or resolution

5 Wr.—22

[Smith, Mayor, &c., *v.* Commonwealth *ex rel.* Dillon.]

to pay him any amount, without such precedent action of councils, is without authority of law and a nullity.

"That it is not true, as alleged and set forth in complainant's bill of complaint, that the resolution referred to in said complaint was presented to respondent after the same had been passed by both branches of the city councils over his veto, or that he had any legal notice of the passage of the same; that he never saw said resolution after the same was returned with his veto to the branch of the councils in which it originated, until subsequent to the service of the rule to show cause in this case upon him. And that he could not legally issue a warrant to complainant for the said $50, directing the treasurer to pay him the same, because there was not, at the time of the passage of said resolution, nor any time subsequent thereto, any money in the treasury of the city of Erie, except such as had been previously specifically appropriated and set apart by law for other and specific purposes; and, therefore, the respondent could not legally issue the same upon a fund which had no existence."

The answer was verified by affidavit, in the usual form.

On the 29th of January 1861, after replication filed, a jury was called, impannelled, and sworn, and the following questions of fact submitted to them:—"1. Whether the action of the city councils on the mayor's veto message, and the draft or warrant drawn in pursuance thereof, were brought to the notice of the defendant, and his signature to the draft requested before the filing of this bill. 2. Whether, at the time of the passage of the resolution in favour of plaintiff, over the mayor's veto, or at any subsequent time before the bringing of this suit, there were any funds in the treasury of the city applicable to a warrant in his favour if it had been drawn." January 30th 1861, the jury found for the plaintiff on both the issues of fact submitted.

On the 12th of March the respondent asked leave to amend his answer by adding these words:—"And the said resolution, nor no resolution of the councils of the city of Erie, did authorize, direct, or empower the said respondent to draw his warrant on the treasurer of the city of Erie to pay the said Thomas Dillon the sum of $50, or any other sum, and the said Smith, neither as mayor of the city of Erie, nor by any other authority, has the right or power to draw his warrant on the treasurer of the said city of Erie for the payment of money for this or any other purpose." Which amendment was refused by the court.

Same day the case was argued, and the following decree entered:—"It appearing that the return or answer made by the defendant thereon to the alternative *mandamus* is altogether insufficient, both in law and in fact, it is now ordered and adjudged that judgment be entered upon the demurrer for the relator, and that the defendant be and is hereby commanded to draw his

[Smith, Mayor, &c., *v.* Commonwealth *ex rel.* Dillon.]

warrant in favour of the relator, Thomas Dillon, upon the treasurer of the city of Erie for amount due the said relator as set out in his bill or petition in this case, to wit, for the sum of $50, and the said defendant, S. Smith, pay the costs of this proceeding. March 13th 1861, peremptory *mandamus* issued.

The case was thereupon removed into this court by the respondent, who complained that the court below erred in awarding the peremptory *mandamus,* and in overruling respondent's motion to amend.

*Benjamin Grant,* for plaintiff in error, argued:—1. That the court as constituted, with the additional law judge presiding, had no jurisdiction in cases of *mandamus,* but that the "several Courts of Common Pleas, the president being present," alone possess this power: Act of June 14th 1836, § 18, Dunlop 686.

2. That the complaint was insufficient, in that while it sets out that it was the *duty* of the mayor to affix his signature to the warrant, it does not set out any legal obligation imposed by law or ordinance, and does not therefore present a perfect case: Thomas *v.* Allegheny County, 8 Casey 223; 1 Law & Eq. Rep. 454; 1 Wend. 318; Heffner *v.* The Commonwealth, 4 Casey 108; The King *v.* The Archbishop of Canterbury, 8 E. 213; Whart. Law Dic. 606.

3. There was an ample remedy at law by indictment or *assumpsit,* and therefore the proceedings for *mandamus* were improper: Hester's Case, 2 W. & S. 416; Commonwealth *v.* Rossiter, 2 Binn. 362; Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny County, 1 Wright 279; Commonwealth *v.* City of Pittsburgh, 10 Casey 496; Heffner *v.* The Commonwealth, 4 Id. 112; The People *v.* Trustees of Brooklyn, 1 Wend. 318; State *v.* Holliday, 3 Halst. 205; Marbury *v.* Madison, 1 Cranch 137; 2 Wh. Selwyn N. Pr. 1103; Drexel *v.* Mann, 6 W. & S. 386; James *v.* The Commissioners, 1 Harris 75; Reading *v.* Commissioners, 1 J. 196.

4. The city authorities had no power to pay the high constable until after the rate of compensation had been fixed: Act of April 8th 1833, relative to borough of Erie, § 15.

5. Complainant could not enforce a collection until he had qualified himself for the discharge of his duties according to law, viz., by taking the oath of office, and entering the required security: Act of April 8th 1838, § 13. These requirements were conditions precedent to the exercise of the office by complainant.

6. The amendment proposed by respondent should have been allowed as a matter of right both in law and equity: Brooks *v.* Miller, 1 Gr. 202; 1 T. & H. 408; Act of March 21st 1806, § 6.

*John P. Vincent,* for defendant in error.—1. The amendment

[Smith, Mayor, &c., *v.* Commonwealth *ex rel.* Dillon.]

.was not offered until after verdict, and was rejected because the facts contained in it could not then be submitted to the jury.

2. The powers of Judge Derickson are coextensive with that of the president judge in all matters, both civil and criminal: Purd. Dig. 1165, § 17, 1244; Foust *v.* The Commonwealth, 9 Casey 338.

3. The respondent's answer is "argumentative, evasive, and inferential." We were not bound to reply to it, and hence our first allegations must be taken *pro confesso*: 1 Wright 224, 279. Our demurrer does not admit the truth of the answer. The same may be said of our fourth allegation, and the offer to amend does not help the respondent because too late. The two questions of fact which were properly and legally raised in the case were submitted to and decided by the jury in our favour. The proposed amendment presented new facts which they had not passed upon. The only real question is whether this is the proper remedy, for our right is beyond dispute. A suit against the city would still leave the mayor between us and our money. An indictment against the mayor for malfeasance might have punished the mayor, but would not have given us our money. As to the omission on the part of the relator to give security, that fact was known to councils, notwithstanding which they established his right to this compensation, that is by their votes, which was all the mayor could ask, after having done his duty in calling the attention of councils to it.

The opinion of the court was delivered, February 3d 1862, by Lowrie, C. J.—This is a *mandamus* case, and it is argued that the assistant judge of the Common Pleas has no authority to try it, though he is a judge learned in the law, and though the law that provides for his commission gives him the same authority as the president judge. This law was passed long after the Mandamus Law, which requires the presence of the president judge, and therefore modifies it thus far. We think he could try the case.

The petition avers that the city councils had passed an ordinance to pay the relator "fifty dollars, to apply to his services as high constable," and that the mayor, in violation of his duty, refuses to sign a warrant on the treasurer for the payment of it.

The duty of the mayor is positively averred, and we think he plainly denies it by saying he does not know of any law or ordinance requiring this duty of him, unless when specially directed by the councils; but that claims passed by councils, without any specific directions, are payable by the treasurer, without his intervention.

We need not say much about this issue, for, very clearly, it is one not of fact, but of law—the duties of a public officer; and

[Smith, Mayor, &c., *v*. Commonwealth *ex rel.* Dillon.]

the relator ought, in his petition, to have referred to or set forth the law or ordinance imposing the duty averred by him, and, at the very least, he ought to have shown it on the trial below or here. He has done neither, and therefore neither in his petition nor in the argument has he shown any ground for a *mandamus*.

Again, the relator avers that he was duly elected and qualified as high constable, and the defendant answers that he was not duly qualified, because he has not given security as required by the Act of 8th April 1833, § 13; and this raises an issue of fact, which has not been decided. On this account there ought to have been no judgment against the defendant, as we have shown in the case of Adjutant-General Bowman, 1 Casey 23.

Again, the defendant avers that the councils have never established any salary for the high constable, as is required by the act creating the office (8th April 1833, § 15), and therefore there is no foundation for the ordinance on which the relator relies. We do not need to decide that this objection, if true in fact, is well founded in law, for the case is decided without it. But as a general principle, we receive it with great favour, because councils, who are mere trustees of public functions, ought not to vote away the people's money as matter of grace and favour, and because public officers ought to have their compensation fixed beforehand, so as not to be dependent for it on the mere pleasure of councils.

The case fails entirely, because the relator shows no law imposing the duty sought to be enforced by the writ.

Judgment reversed, and judgment for the defendant with costs.