## Findley *versus* City of Pittsburgh.

The 6th sect. of the Act of Assembly of May 23d 1874, directing that contracts shall be awarded to the "lowest responsible bidder," imposes duties upon city authorities which are not simply ministerial, but discretionary and deliberative, and courts will not therefore interfere to restrain these authorities from awarding a contract to one who is not the lowest bidder, even though their action has been indiscreet, unless it is shown that they have acted corruptly and in bad faith.

October 2d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, and WOODWARD, JJ. WILLIAMS, J., absent.

Appeal from the Court of Common Pleas, No. 2, of *Allegheny county*: No. 234 of October and November Term 1875, in Equity.

This was an appeal from the decree of the court dismissing a bill in equity, filed by George Findley, a tax-payer, against the authorities of the city of Pittsburgh, to restrain them from awarding a contract for certain "wrought-iron rising mains," to be used in connection with the city water-works, to J. M. Brush & Co., whose bid, it was alleged, was $5000 higher than that contained in another proposal for the same work.

The facts and questions involved are substantially the same as those in the preceding case of *Commonwealth v. Mitchell.*

Complainant's bill set forth, that proposals were advertised, and bids received for the construction of the rising mains; that N. Snyder & Co. were the lowest bidders, and were responsible bidders, but that the city councils have arbitrarily rejected this bid, and awarded the contract to Brush & Co.

It appeared that the bid of Snyder & Co. amounted to about $125,000, that of Brush & Co. to about $130,000, and the other bids were $140,000, $167,000 and $172,000.

It was not alleged in the bill that there was any actual intention of fraud on the part of the city councils, nor was there any charge of collusion on the part of Brush & Co. with any city official.

The answer of Brush & Co. asserted good faith and readiness to perform the contract on their part.

The answer of the city showed that the superintendence of the erection of the water-works was placed by ordinance in the water committee; admitted that Snyder & Co. were the lowest bidders, but denied that they were responsible bidders, and then set forth

the same facts and made the same averments as those contained in the answer in Commonwealth *v.* Mitchell.

The case was referred to a master, whose findings were in substance those of the court in Commonwealth *v.* Mitchell. To this report plaintiff filed a number of exceptions. In their opinion, reviewing the exceptions to this report, the court, Ewing, P. J., *inter alia*, said:—

"We understand the master to find substantially that the allegations contained in the answer are true, except that he finds that the specifications for the boiler contract were not 'surreptitiously' and with fraudulent intent, altered by N. Snyder & Co.

"We have read the entire testimony with care, and while we are not disposed to set aside the positive findings of the master, we find:—

"That, by the express directions of the water commission, approved by their successors, the water committee, 'mud drums' were made a part of the specifications for proposals for boilers; that no authority was ever given by either the commission or committee to erase these words; that, either before or after the proposals were received, the words 'mud drums' were erased from the specifications on which the bid and contract of N. Snyder & Co. were made. That the committee entered into the contract with N. Snyder & Co. without any notice or knowledge that these words had been erased, and that the committee, at the time they rejected the bid of N. Snyder & Co. for 'rising mains,' believed, and had good cause from investigation to believe, that this erasure had been made fraudulently by N. Snyder & Co., or by collusion with some clerk in the employ of the city.

"As to the allegation that Snyder & Co. had attempted to bribe the inspecting officer of the water committee, we are unable to see how any but one conclusion can be drawn from the testimony.

"Mr. Lowry says he was approached by the senior member of the firm pending the bid, and also after the contract was awarded for the boilers, and on the latter occasion, on shaking hands, money was left in his hand, which he immediately refused and returned. When afterwards charged by Lowry, in presence of a member of the committee, with having attempted to improperly influence him, Snyder is silent. But if there were no testimony but that of Mr. Snyder himself, who is called by the plaintiff in rebuttal, it would be conclusive. He admits the offer of money substantially as stated by Mr. Lowry. There is no pretence that there was any other relation or business between them than that Lowry, as officer of the committee, was inspector of the work. There was nothing for which money could honestly pass between them. Snyder says that he did not intend to bribe Lowry, and that is all the explanation.

"There are some transactions that neither require nor are capable of explanation. The offer of money by Snyder to Lowry was one of these. Of the same general character, but much more skilfully

offered, was the proposal by Snyder to fee and retain Mr. Milligan, a member of the water committee, as additional counsel. The offer deceived no one. The attempt to bribe, as charged in the answer, is clearly made out.

"With these modifications, the exceptions to the report of the master are dismissed;" and the court then refused the injunction and dismissed the bill.

The plaintiff appealed, and assigned this action of the court for error.

*W. H. & A. N. Sutton,* for appellants, contended that pecuniary ability was what was implied by the word "responsible," and that it had no reference to the habits of the bidder; that the city was only concerned in having the work done skilfully, and it was a matter of no import what were the morals or habits of the contractors, so that they were competent to do the work. The authorities cited in support of this position were in the main those produced in the foregoing case of Commonwealth *v.* Mitchell.

*Slagle & Wiley,* and the City Solicitor, *Thomas S. Bigelow,* for appellee, argued that the "responsibility" in the contemplation of the statute was clearly not to be limited to a pecuniary liability, and that if the city councils honestly believed that a bidder was dishonest, they had a right to exercise the discretion they did, and reject his bid, although it was the lowest; and that where this exercise of discretion has not been improperly or corruptly induced, courts have no authority to interfere.

Mr. Justice GORDON delivered the opinion of the court, November 6th 1876.

Whilst we are not prepared to take the same view of the facts in this case as did the learned judge of the court below, in that we think the allegations of fraud, charged against N. Snyder & Co. in a former contract with the city, are not sustained, yet we must adopt his final conclusion as the proper one. We have ruled in the case of the Commonwealth *ex rel.* N. Snyder & Co. *v.* Mitchell *et al.* and the City of Pittsburgh, argued at the same time with this case, that the Act of Assembly imposed upon the city authorities duties, in awarding the contract in controversy, which were not merely ministerial, but deliberative and discretionary, and that as a consequence the writ of mandamus would not lie to compel them to award the contract to N. Snyder & Co., who were the lowest bidders; that the city authorities having, perhaps indiscreetly, but not corruptly, proceeded to the performance of the duty with which they were charged by the statute, the matter was put beyond our reach. It is obvious, therefore, that it would be utterly incongruous for us to do in this case what we refused to do in the former one; for it is

1 NORRIS—23

[Findley *v.* City of Pittsburgh.]

to be observed that the prayers in the petition for the mandamus, and that in the bill in this case, are substantially the same. Were we, under such conditions, to reverse the court below and issue the process prayed for, we would bring about the same result which we refused to permit by the writ of mandamus. Had there been fraud exhibited in the awarding the contract involved in this controversy, we might have come to a different conclusion, but under the circumstances, as they have been presented to us, we must decline to interfere with the action of the Common Pleas.

The decree is affirmed, at the costs of the appellant.