## Commonwealth ex rel. The Mount Washington School District *versus* Thomas W. Shaw et al., officers and members of the Central Board of Education.

1. The Act of February 12th 1869 created a central board of education and made the city of Pittsburgh an independent school district. The board of directors in the sub-districts were empowered to purchase real estate and to conduct the schools and levy a special tax therefor. Said boards were to notify the central board of the amount thereof, and the tax was to be collected by the city treasurer. The Act of March 22d 1877 provided that the annual levy of taxes of the city should be based upon statements of the various departments, including education and school boards, to the finance committee of councils, which amount was to be certified to councils, and the tax levied by the latter. The Act of June 12th 1878 provided that the central board should ascertain and determine the amount of money necessary for conducting the schools of the city and certify the same to councils, and that councils shall add the amount to the aggregate taxes required for the city and appropriate the same for said purpose. A sub-school district petitioned the court for a writ of mandamus upon the central board to compel them to grant and appropriate to the petitioner the sum of $12,000 for permanent improvements, and to add the same to the amount already ascertained by them to be necessary for conducting the schools of said city for the next fiscal year, and to certify the same to city councils : *Held,* that the writ was properly refused.

2. The language of the Act of 1878, *ex vi termini,* involves necessarily the idea of exercising judgment and deciding according to the sense of propriety and fitness on the part of the central board. It is not only to ascertain but also to determine what amount is necessary for conducting the schools of the city.

November 12th 1880.     Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1880, No. 264.

This was a petition in the court below by the Commonwealth, at the relation of the Washington School District, for a mandamus to compel Thomas W. Shaw and others, officers and members of the Central Board of Education, to appropriate to the petitioner the sum of $12,000 for permanent improvements and certify the same to the city councils.

[Commonwealth *v.* Shaw.]

The petition of the school district sets forth:

1. That by an Act of the General Assembly, entitled "An Act consolidating the wards of the city of Pittsburgh for educational purposes," approved February 12th 1869, the city of Pittsburgh was constituted an independent school district, and each ward of said city was constituted a sub-school district.

2. That by an Act of the General Assembly entitled "A supplement to the several acts incorporating the city of Pittsburgh, enlarging its boundaries," &c., approved the 2d day of April 1872, the borough of Mt. Washington (with others) was annexed to said city and made part thereof as the Thirty-second ward.

3. That by virtue of the aforesaid acts, approved February 12th 1869, and April 2d 1872, respectively, and by an act entitled "A further supplement to an act consolidating the wards of the city of Pittsburgh for educational purposes, approved the twelfth day of February, one thousand eight hundred and sixty-nine," approved March 20th 1873, the several boroughs, including the borough of Mt. Washington aforesaid, which were annexed to the city of Pittsburgh for municipal purposes, by the Act approved April 2d 1872, aforesaid, became and were consolidated for educational purposes, and the jurisdiction of the Central Board of Education and school laws of the said city extended thereover; and thereby the school district, formerly embraced within the said borough of Mt. Washington, became a sub-school district of said city of Pittsburgh, under the name of Mt. Washington.

4. That by the laws of the state of Pennsylvania relating to public schools, it is made the duty of the school directors in each district to establish a sufficient number of schools for the education of every child above the age of six years within the district, who may legally apply for admission and instruction, which laws, so far as they relate to said duty, are in full force and effect within said city of Pittsburgh.

5. That by the fifty-second section of the Act, approved February 12th 1869, aforesaid, it is provided "that the board of directors of every sub-district shall have power and authority to purchase and hold such real estate and personal property as may be necessary for the establishment and support of the sub-district schools within their respective districts," and by the fifty-fifth section of said act it is provided "that the sub-district school directors shall cause suitable lots of ground to be purchased or rented, and suitable buildings to be erected, purchased or rented for school houses, and shall supply the proper conveniences and fuel."

6. That the school building heretofore erected in said sub-district has for a long time been insufficient for the accommodation of all the children of said sub-district who have applied for and are legally entitled to admission and instruction, every part of which building that can be made available, even at great disadvantage, including

[Commonwealth *v.* Shaw.]

the vestibule, being occupied by the schools of said sub-district, and in addition thereto the said school directors have for some time past conducted two of their schools in a neighboring building, which is wholly unsuited for school purposes.

7. That, owing to a constant and now rapid increase of population, still further school accommodations are urgently required in said sub-school district, which cannot be procured in any other way than by the erection of a new building or of an addition to the present school house.

8. That the board of directors of said sub-school district have fully and conscientiously considered the matter and determined, as the least expensive method, to erect a suitable addition to the present building, and upon consultation and advice with competent persons have ascertained that the sum of twelve thousand dollars will be required to defray the cost of such improvement.

9. That your petitioner has no funds or property with which to pay for said improvement, and is advised and believes, and so charges, that it has no direct power to raise money for such purpose but that the same must be appropriated by the councils of the city of Pittsburgh upon an estimate to be ascertained, determined and certified by the Central Board of Education of said city in the manner provided by the general laws of the Commonwealth relating to cities of the second class, to which class the said city belongs.

10. That by an Act of Assembly of the state of Pennsylvania entitled, "An Act in relation to cities of the second class, providing for the levy, collection and disbursements of taxes and water rents," approved the 22d day of March 1877, it is made the duty of councils of such cities to make an annual appropriation of such money as "will be required to defray all the various expenses necessary for conducting the various departments, whether legislative, executive or administrative (including schools, or boards of education, or poor boards), of the city government," and "to cause a tax sufficient for all purposes to be levied and collected of the estates, real and personal, subject to taxation, within such cities."

11. That by an Act of Assembly of said state entitled, "A supplement to an act entitled, 'An Act relating to cities of the second class, providing for the levy, collection and disbursement of taxes and water rents,' approved the 22d day of March 1877, providing the manner of making appropriations for school and poor purposes, and issuing warrants on such appropriations and defining certain powers of the educational and poor departments in said cities," approved June 12th 1878, it is made the duty of the Central Board of Education to ascertain and determine the amount of money necessary for conducting the schools of said cities, and to certify the same to the councils on or before the second Monday of January in each year, and the councils are thereupon required to

[Commonwealth *v.* Shaw.]

add the amount so certified to the aggregate of taxes required for said cities, and shall appropriate the same for school purposes.

12. That, in accordance with the standing rules of the Central Board of Education of the city of Pittsburgh, adopted in pursuance of the provisions of the act last aforesaid, your petitioner did on or before the first day of December 1879, forward to the secretary of said board an estimate of the amount of money necessary for conducting the schools in said sub-school district for the fiscal year beginning on the first day of February 1880, in which estimate was entered and included the sum of twelve thousand dollars for permanent improvements, being for the purpose of paying for the necessary addition to the school building in said sub-district, as aforesaid.

13. That at a meeting of the said Central Board of Education, held on the 13th day of January 1880, the said board agreed upon an amount to be certified to the city councils as the basis of an appropriation for school purposes for the fiscal year beginning the first day of February 1880, and which your petitioner is advised and believes, and so charges, has been certified by said board to said councils, but in which amount no provision has been made for the twelve thousand dollars required by your petitioner for the purpose aforesaid. The said Central Board has wholly neglected and utterly refused to make any provision therefor or for any part thereof, without any just or lawful reason, and in open violation of, and disregard for, the law as expounded by learned and competent counsel employed by the finance committee for that purpose.

14. That, by the laws relating to the city of Pittsburgh, it is the duty of the councils to make provision, by the passage of a proper ordinance, before the first day of February in each year, for the money for conducting the various departments of the city government for the next fiscal year, and unless the said Central Board of Education shall, prior to the passage of such ordinance, include in the sum certified to councils for conducting the schools of said city the sum of twelve thousand dollars, so as aforesaid demanded by your petitioner, the school interests of your petitioner will be greatly hindered impeded, and injured, and your petitioner will be unable to supply suitable school facilities for all the children of said sub-school district as required by law.

15. That, in addition to the foregoing statement as to the necessity of the case, your petitioner further represents that in utilizing the school building of said sub-district it has been necessary to make use of a corridor as an office and recitation room, thereby destroying one of the modes of ingress and egress to and from the building, and thereby diminishing the means of escape from said building in case of danger.

16. That your petitioner is without any specific legal remedy.

[Commonwealth *v.* Shaw.]

17. That the said Central Board of Education is composed as follows : [the names of the members here followed.]

Your petitioner therefore prays that a mandamus may be issued to the said board to grant and appropriate to your petitioner the sum of twelve thousand dollars for permanent improvement, and to add the same to the amount already ascertained by them to be necessary for conducting the schools of the said city for the next fiscal year, and certify the same to city councils as required by law, and it will ever pray, &c.

The court granted a rule upon the officers and members of the board to show cause why the writ should not issue against them. The case was heard on this petition, and the rule was discharged, the court delivering the following opinion :

" The Act of 12th February 1869 created a Central Board of Education, and made the city of Pittsburgh an independent school district. The board was thereby empowered to rent or purchase and hold such real estate as might be necessary for the establishment and support of a high school and schools for colored children, as required by the act. It was to assess and apportion taxes for certain school purposes and levy same, which were to be collected by city treasurer. It was also authorized to erect buildings for high schools and schools for colored children, and also furniture, books, apparatus and other personal property for same. To appoint all teachers for said schools, and teachers of music and of all special branches in ward schools; to determine what branches of learning should be taught in sub-district schools, high schools and schools for colored children; to decide what school books should he used, and the number of teachers in all schools, and fix pay for their service.

" The board of directors of the several sub-school districts were empowered to purchase and hold real estate, and purchase property necessary for schools, the title of such property to be in such sub-district, and they were required to supply their school-houses with fuel and proper conveniences, and to have the appointment of teachers of the sub-district schools. They were also to levy special tax for purchasing or paying for ground and buildings, and repairs and furniture, apparatus and all necessary books and stationery and fuel therefor and janitors, levied and assessed as follows : The several boards of sub-school districts were on or before the last Monday of May of said year to notify the Central Board of the rate of taxation respectively levied by them, and thereupon the Central Board was immediately to cause the amount thereof to be added in a separate column opposite the name of each person in the duplicate for said ward of taxes levied by said Central Board. The taxes levied by the Central Board to be placed in one column, headed ' City School Tax,' and those levied by the sub-school board to be placed in another column headed ' Ward School Tax,' and

[Commonwealth v. Shaw.]

the taxes to be collected by the city treasurer. The sub-school district was also authorized to borrow money for ground and buildings for school purposes.

" The Act of 22d March 1877 provided that the annual levy of taxes of the city should be based upon statements of all the departments of the city government, including education and school boards, giving names, dates, amounts and objects of expenditures to the finance committee of councils, and said committee, 'in lieu of any existing authority in relation thereto,' were directed to make and agree upon an estimate of the various sums of money required to defray all the various expenses necessary for conducting the various departments of city government, including schools or boards of education, which estimates were to be founded upon reports obtained from said departments, and which amount, when established by said finance committee, was to be certified by it to the city councils, to be by them accepted or modified as the aggregate expenses of the city, and then a tax was to be levied by councils.

" The Act 15th March 1878 provides that councils shall in each district where indebtedness existed before the Act 22d March 1877, levy a sufficient tax to pay interest thereon, and the principal in thirty years, to be levied specially on the property of such district.

" Then comes last of all the Act 12th June 1878, providing that the Central Board shall ascertain and determine the amount of money necessary for conducting the schools of the city, and shall certify the same to councils on or before the second Monday of January of each year, and finally that councils shall add the amount to the aggregate taxes required for the city, and shall appropriate the same for the purposes aforesaid, to wit, conducting the schools of the city. The third section of this is as follows : ' That it is hereby declared to be the true intent and meaning of the act of which this is a supplement (22d March 1877), that none of the powers theretofore belonging to the Central Board of Education, and the various school boards in said city, prior to the passage of said act, shall be impaired or affected in any manner, except in relation to the levy and collection of taxes.'

" It will be seen that under the Act of 1869, sect. 17, the Central Board were to determine the amount of school taxes to be levied upon the school district (city) for each year (with money from state and other sources) to be sufficient and necessary ' for the purchase of ground and the erection of buildings necessary for the high schools and schools for colored children,' to keep such schools in operation, and also for the payment of the teachers of all the sub-district schools, and the several sub-school boards were to levy and assess a special tax for purchasing and paying for ground and buildings, and for repairs and furniture, apparatus and

15 NORRIS—18

[Commonwealth *v.* Shaw.]

necessary books, stationery and fuel, and for pay of janitors, of which they were to notify the Central Board, and which amount it was the duty of the Central Board to add to its assessment in the manner specified in the act, and which it was also the duty of the city treasurer to collect from the inhabitants of the proper ward. The assessment of the Central Board was a charge upon the whole city (school district), and that of the sub-school district only a charge upon the respective wards.

"The Act 22d March 1877 'impaired or affected' (see third section), none of the powers vested in the respective school boards (Central and sub-school) except in relation to the levy and collection of taxes, but it vested the power of levy in the city councils, giving them entire control and discretion over the subject, and made it the duty of all the departments of the: city government, in terms including education and school boards, to make a statement of their several demands or requirements to the finance committee of councils, and said finance committee were directed in lieu of any existing authority, that is, in the place of and to the exclusion of existing authority, to make and agree, &c., and thereupon *to certify its estimates to city councils* who were to accept or modify them as their judgment dictated. Now, under this provision it is clear to my mind that the finance committee first, and the city councils ultimately, were clothed with absolute discretion as to what amount of money should be raised for the school department and to what purposes the several amounts should be applied.

"Then the Act 12th June 1878 took away this authority of councils over the school department, and provided that the Central Board of Education should ascertain and determine the amount of money necessary for conducting the schools of the city, and certify the same to councils, whereupon they were bound to add such sum to the aggregate city taxes and appropriate the amount so raised for the purpose specified by the Central Board. The language of this act, *ex vi termini*, involves necessarily the idea of exercising judgment and deciding according to its sense of propriety and fitness on the part of the Central Board. It is not only to ascertain but also to determine what amount is necessary for conducting the schools of the city.

"So that even assuming (what may admit of grave doubt) that the Central Board could by its requisition impose upon the city at large the expense of buying ground and erecting school houses in the several sub-school districts at their discretion, I have no hesitation in coming to the conclusion that under the facts alleged in this petition for mandamus the plaintiff has no right to the relief prayed for, and, therefore, the prayer thereof is refused, and this rule to show cause why an alternative mandamus should not be awarded is discharged.

[Commonwealth v. Shaw.]

The school district took this writ and alleged that the court erred in discharging the rule.

*Samuel Harper* and *C. C. Taylor*, for plaintiff in error.—We contend: 1. That by the general school laws of the state, it is obligatory upon the school directors of each district to provide sufficient school facilities for the education of all children between the ages of six and twenty-one years, and that for failure to do so they are subject to removal from office. (See sect. 9, Act of May 8th 1854.)

2. That this duty is by the Act of February 12th 1869, placed upon the school directors of the various sub-districts in the city of Pittsburgh, who alone have the right to determine when, where, to what extent and in what manner it shall be performed.

3. That this duty has not in any degree been lessened, nor the power of the sub-district directors in relation to it been in any manner impaired or taken away by the Act of March 22d 1877, or any of its supplements.

4. That as the sub-district directors have been deprived of the taxing power, and it is the duty of councils to provide for all of the expenses in conducting the schools of the city, the cost of erecting school-houses is a charge upon the city at large.

5. That when the directors of a sub-school district have determined that a necessity exists for additional school facilities, it is mandatory upon the central board to ascertain and determine the cost thereof as a part of the amount necessary for conducting the schools of the city.

As the law makes the local boards the judges of the necessity for additional school facilities, we contend that the amount of money needed for that purpose is as absolutely determined by the action of such boards as the amount necessary to pay teachers salaries after the central board has fixed the number of teachers and the salary schedule, and is equally beyond the discretion of that board. In the exercise of the powers vested in the local boards, they clearly have the right to buy ground and build school houses. Act of February 12th 1869, sect. 55, Pamph. L. 150. This involves the creation of a debt, and authority to create a debt implies an obligation to pay it, and where no special mode is provided, it is implied that it is to be done in the ordinary way by the levy and collection of taxes: Commonwealth v. Allegheny County, 1 Wright 290. In such a case mandamus will lie to compel the levy of the tax, even though the statute gives councils discretion as to the advisability or the amount of the tax: Dillon on Municipal Corporations, 2d. ed., sect. 689, and cases cited.

The school board never exercised any discretion in this matter. It has never inquired into the necessity of the requisition, but has

[Commonwealth *v.* Shaw.]

denied it on the sole ground that the city at large cannot be made liable for it.

*Slagle & Wiley,* for defendants in error.—Under the acts in existence at the time of the passage of the Act of 1877, the local boards had power to build school houses and to maintain them in good order, and the expense of so doing was imposed upon the local districts respectively. Many of them had built large and costly houses—the cost of which they had, in many instances, paid in whole or in part. To impose the cost of buildings in other districts upon the whole city would be so grossly unjust to the districts which had already provided suitable buildings, that it cannot be supposed the legislature intended such effect. This would be the effect of the construction claimed by plaintiff.

All difficulty is avoided by holding that the Act of 1877 does not include the affairs of the sub-districts, and that their power to levy taxes for local purposes are not affected by it. This would be consistent with the principle of the Commonwealth *v.* Allegheny County, 1 Wright 290, "That authority to create a debt implies an obligation to pay it."

If the position of the plaintiffs is correct, that the power to levy taxes is taken away from the local boards, then it follows that the power and duty of the local boards to build school houses falls, and as it is not pretended that this power has been devolved upon the city, it is simply a case in which the legislature has failed to furnish appropriate means to carry on these public duties. But admitting that the duty has been imposed upon the city to levy taxes to pay for building school houses, is the duty mandatory or one of discretion?

The judgment of the Supreme Court was entered, November 22d 1880,

PER CURIAM.—This judgment is affirmed on the clear and convincing opinion of the learned judge. We do not, however, entertain the grave doubt therein expressed.

Judgment affirmed.