## PETITION OF MARTIN KNARR.

FOR A WRIT OF MANDAMUS TO THE COURT OF QUARTER SESSIONS OF JEFFERSON COUNTY.*

Presented October 11, 1889—Refused October 29, 1889.
[To be reported.]

1. Where the general laws relating to the granting of licenses, to wit, the acts of March 31, 1856, P. L. 200; April 20, 1858, P. L. 365; March 22, 1867, P. L. 40, were in force prior to the act of May 24, 1887, P. L. 194, the granting or refusing of licenses to wholesale dealers in liquors continues to be within the discretion of the Court of Quarter Sessions of the proper county: Nordstrom's Petition, ante, 542.

2. Wherefore, when, from the petition for an alternative mandamus and the accompanying record, it appears that the Court of Quarter Sessions of Jefferson county heard an application for a wholesale license, and upon due consideration refused it, although no objection or remonstrance was filed of record, the writ will be refused: Pollard's Petition, ante, 507, and Prospect Brewing Co.'s Petition, ante, 523, distinguished.

3. The office of a mandamus, in such cases, is to require the performance of a judicial function: if a judge refuse or neglect to hear, the Supreme Court will enjoin upon him the performance of that duty; but, when he has heard and determined, the exercise of his discretion will not be revised unless in extreme cases: Raudenbusch's Petition, 120 Pa. 328; Commonwealth v. McLaughlin, 120 Pa. 518; Newlin's Petition, 123 Pa. 541.

---

* This case, also, though belonging to the Western District, is reported here, on account of its connection with the preceding license cases.

Opinion of the Court.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 000 October Term 1889, Sup. Ct. (W. D.)

On October 11, 1889, Martin Knarr presented a petition to
the Justices of the Supreme Court representing:

That he was the lessee of a brewery and adjacent buildings,
now in the borough of Punxsutawney, formerly in Young
township, fully equipped and fitted for the manufacture of
malt and brewed liquors; that he prepared and presented to
the Court of Quarter Sessions of Jefferson county, to No. 7
February Term 1889, his application and petition for a brewers'
wholesale license under the act of May 24, 1887, P. L. 194,
which application and petition were in due form, as provided
by the orders of the court, a certified copy of the record thereof
being attached; that in said application and petition the pe-
titioner showed to the court that he was a citizen of the
United States, of temperate habits, and of good moral char-
acter; that no objection or remonstrance was made or filed to
the granting of a license to the petitioner, yet notwithstanding
these facts the said court on February 19, 1889, called said
application up for hearing and thereupon, without assigning
any reasons therefor, refused said license; that under the pro-
visions of said act, there being no objections upon the record
and no issue joined upon any matter in issue material under
the law, the petitioner as a matter of right was legally entitled
to have said license granted to him;—praying that a writ of
alternative mandamus might be issued directed to the judges
of said court, commanding them, etc.

A certified copy of the record of said application was filed
with the foregoing petition.

*Mr. Campbell*, for the petitioner.

OPINION, MR. JUSTICE WILLIAMS:

The petitioner was an applicant for a license to sell malt and
brewed liquors by the gallon and larger measure as a brewer.
His application was refused by the Court of Quarter Sessions.
He comes now into this court and asks a writ of mandamus
requiring the judges of that court to grant his license or show
cause.

We learn from the petition and the accompanying copy of the record the following facts, about which there is no controversy or room for doubt:

1st. The petition was actually heard at the proper time by the court.

2d. After hearing the application was refused.

3d. There was no remonstrance on file, and no parties appearing to object by evidence or otherwise to the granting of the license.

The indorsement on the back of the petition is, " The within petition having been presented in open court, on due consideration thereof a license is refused." The single question presented is, whether the court had the right, after duly considering the application, to refuse it, in the exercise of a judicial discretion moved by the personal or official knowledge of the judges thereof.

The act of 1856, which may be regarded as the foundation on which our license system has been built, committed the granting and refusing of licenses to all classes of venders, to the " Court of Quarter Sessions of the proper county, except Philadelphia and Allegheny." From that time forward to the legislation of 1887, the two counties named have had a license system peculiar to them. In the rest of the state, however, the power to grant licenses has been by the acts of 1858, 1867, and their supplements, continued in the Courts of Quarter Sessions; and distillers, brewers and venders by the quart and larger measure have been required to come into the court by petition, in the same general manner as the keepers of hotels and restaurants. By the act of 1858, the courts were directed to hear " other evidence than that of the applicant," and to grant or refuse the license in accordance with the facts brought to their notice. This was merely declaratory of the duty of the courts and did not enlarge or diminish their powers. It was probably intended to set at rest all question about the duty of the court to exercise its power to hear and determine, regardless of the prima facie showing made by the petition on file. Substantially the same provision was repeated in the act of 1859, in that of 1867, and in the recent legislation of 1887.

In the act under which this application is made, the act of May 24, 1887, P. L. 194, the existence of this power to hear

Opinion of the Court.

and determine applications for license on their merits, rather than on the face of the petitions, is recognized and regulated thus: "The said court shall fix by a rule or standing order a time at which all persons applying or making objection to applications for licenses may be heard by evidence, petition, remonstrance or counsel." Instead, therefore, of taking away or limiting the power over licenses previously residing in the courts, the act of May 24, 1887, distinctly recognizes it and makes provision for the manner in which it shall be exercised. It is very clear, therefore, that where the general laws relating to this subject have prevailed prior to 1887, the power of the Courts of Quarter Sessions has not been abridged by that act. The granting or refusal of licenses continues, therefore, to be within the discretion of "the Courts of Quarter Sessions of the proper county, except Philadelphia and Allegheny," precisely as before.

This being so why should an alternative writ issue? The duty of the judges of the court to whom this petition came was to hear and determine it. This is exactly what they have done. We have repeatedly said that the office of a mandamus is to require the performance of a judicial function, not to regulate the mental processes of a judge. If he refuses or neglects to hear, we may enjoin upon him the performance of that duty; but, when he has heard and decided, we cannot require him, unless in extreme cases, to lay his modes of reasoning and his moral standards before us, that we may revise his discretion and substitute our own.

But it is urged that the case of the Prospect Brewing Co. holds a different doctrine. We do not so understand it. That case arose in the city of Philadelphia, which prior to 1887 had its own distinct license system. The licenses were granted by a county officer whose functions seem to have been ministerial and not judicial. The same thing is true of Pollard's Case, which arose in Allegheny county. In neither of these counties had the courts any jurisdiction over the granting of licenses to sell by the quart or larger measure. When, therefore, the duty of the county officer was transferred to the courts by the act of 1887, with the direction to exercise it in accordance with "existing laws," the question was at once encountered, what are the existing laws in Philadelphia and

Allegheny relating to the granting of wholesale licenses? The answer was, there are none except such as relate to the powers and duties of the officer whose functions were transferred by the act of 1887 to the Quarter Sessions. Outside of these two counties, the general laws, beginning with the act of 1856 and ending with that of 1867 were the " existing laws." They related to the power of the courts and regulated its exercise, and were left in full force by the act of May 24, 1887. It is thus easy to be seen that the cases of Pollard and the Prospect Brewing Company stand on the local laws of the counties from which they came.

This case comes from that part of the state where the laws existing prior to 1887 were the general laws above referred to, and it is to be decided in accordance with their provisions. But this, it may be objected, makes one rule for Philadelphia and Allegheny, and another for the rest of the state. It does not make, but it recognizes, a different rule which the legislature established nearly half a century ago, and has steadily maintained for the two counties excepted from the provisions of the act of 1856, from that provided for the rest of the state. We should be glad if the act of 1887 had provided a uniform license law to be applied, not according to previous legislation as it might be found to be in different parts of the state, but according to its own clear and self supporting provisions. It did not do so. We cannot make the law, but must declare it as we find it. This is not always a pleasant duty, and disappointment at the insufficiency of an act of assembly to meet the public expectation may, as it often does, find vent in expressions of dissatisfaction with the courts. It generally results, however, in such modifications of the statute as remove the inconsistency or correct the mistake, and so express fully the popular will.

We conclude by referring to a few of the recent utterances of this court upon the office of the writ of mandamus, and the grounds on which it will be refused: Raudenbusch's Petition, 120 Pa. 328; Newlin's Petition, 123 Pa. 541; Commonwealth v. McLaughlin, 120 Pa. 518. Upon the other question, that of the reason and scope of the rule in the cases of Pollard and the Prospect Brewing Company, we refer to the opinions in those cases, and to an opinion filed at the present term by the

Statement of Facts.

CHIEF JUSTICE in Nordstrom's Case, in which the subject is discussed with great clearness and force.

The alternative writ of mandamus is refused.