Phœnix Iron Co. *versus* Commonwealth *ex rel.* Sellers.

1. The books and papers of a trading corporation, though of necessity left in some one hand, are the common property of the stockholders; and unless the charter provides otherwise a stockholder has the right, at proper times, to inspect them personally, and with the aid of a disinterested expert to make extracts from them, for a definite and proper purpose,—in this case to prepare a stockholder's bill in relation to certain grievances which the relator alleged he had sustained by the fraudulent management of the affairs of the company.

2. Until a stockholder of a corporation has prepared and filed his bill in equity in respect to the grievances which he alleges he has sustained by the fraudulent mismanagement of the affairs of the company, the Court will not determine whether the matters involved have been adjudicated in prior proceedings between the same parties.

3. The ordinary practice in writs of mandamus is, to direct an alternative mandamus to issue when the Court is satisfied on affidavits that the writ should be issued as a matter of justice and right to compel the performance of an act or duty, for which otherwise there would be no adequate remedy. This gives the party to whom it is directed an opportunity to do the act, or to show good reason at the return of the writ why he should not do it. He does this by making a return to the writ. It is at this point the pleadings in the cause begin. The return may traverse the facts alleged in the writ, or admitting them, may avoid performance, by stating sufficient facts in excuse. The relator may then demur, plead to, or traverse the facts set forth in the return.

April 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Philadelphia county:* Of January Term 1886, No. 81.

On January 27th, 1883, George H. Sellers, a stockholder in the Phœnix Iron Company, which is a manufacturing corporation having no franchise but that of corporate existence, applied for a writ of alternative mandamus to compel the production for inspection of books and papers, to enable him to prepare a stockholders' bill in equity in respect of certain alleged grievances.

In answer to a rule to show cause, the defendants resisted the prayer of the petition on two grounds:

1. Because there was no right to this relief at law, but that the remedy was in equity.

2. Because if there was such right to relief at law, there were circumstances in this case, in view of which the relator was not entitled to the relief sought, which circumstances were fully stated in the affidavits filed March 7th, 1883, of David Reeves, the president of the Phœnix Iron Company, and of the other defendants.

On March 21st, 1883, judgment was given for the defendants and the writ of mandamus was refused. The relator thereupon took a writ of error to the Supreme Court to July Term, 1883, No. 105, upon which the judgment of the Court below was reversed. A *remittitur* was taken and filed April 3d, 1884. This case is reported 9 Outerbridge, 111, where the facts set forth in the petition are given.

Upon filing the *remittitur* a writ of alternative mandamus issued, reciting the complaint in the petition contained, commanding as follows:

We, therefore, being willing that due and speedy justice should be done in this behalf, do command you, the said the Phœnix Iron Company, David Reeves, William H. Reeves, Carroll S. Tyson, John Griffen, George Gerry White, secretary and director, and James O. Pease, treasurer, firmly enjoining that forthwith you give to the said George H. Sellers, with his clerk or clerks, access to all of the books and papers of the said the Phœnix Iron Company, as he may require, in order to ascertain

1. What salaries are now and have been, during the last ten years, paid to the officers.

2. What compensation has been paid to its officers, as trustees of its real estate, and in other ways, if any, beyond their salaries.

3. What items constitute the indebtedness alleged to be due to the estate of the late David Reeves.

4. What sums have been divided between the Phœnix Iron Company, and Clark, Reeves & Co., under their contract.

5. What profits have been realized from the joint operations under these contracts.

6. What dispositions have been made of the entire receipts of the corporation.

7. What authority there was for the conveyance of the real estate of the company, made February 1st, 1875.

And that all and singular the matters for the speedy performance of the foregoing, according to the exigencies of the law, you shall do and execute immediately, or in default thereof that you make known to us, in our said Court of Common Pleas, No. 2, for the city and county of Philadelphia, before the judges thereof, June 9th, A. D. 1884, why you have not done the same.

On the return day, June 9th, 1884, the defendants made known why they did not give the relator, with his clerk or clerks, access to the books and papers of the Phœnix Iron Company, as he required. Their return was, *inter alia*, as follows:

1. The respondents insist that the right of such inspection or

access wherever and to whatever extent it exists is personal, and cannot be exercised by agents of the relator.

2. That some time before the application for the rule to show cause why this mandamus should not issue, the relator filed a bill in equity in the Court of Common Pleas of the city and county of Philadelphia, No. 2, in which the said Phœnix Iron Company and David Reeves and others, president and directors of said company, were made defendants, seeking discovery and relief, and that said bill included all matters in respect of which he alleges he now intends to file a bill, for the preparation of which he seeks to obtain information by the inspection of the books and papers mentioned in this writ, saving and excepting those which show the debt due to David Reeves, deceased, by the Phœnix Iron Company, or relate to that debt.

This bill was removed to the Circuit Court of the United States for the Eastern District of Pennsylvania, under the provisions of the Act of Congress.

To this bill the Phœnix Iron Company demurred, and after hearing counsel it was adjudged by the Court in which the cause was then pending. that the complainant, the present relator, was not entitled to the relief prayed, saving as to so much of the bill as prayed relief and discovery in aid of the relief on the ground of fraud. That the fraud alleged by the bill consisted in and arose out of the fact that the officers and directors of the corporation, and persons having the control of the corporation, were parties to a contract between the corporation and the firm of Clarke, Reeves & Co.—which is the same contract as is averred in the said writ to have been made between the same parties in 1870—and were the same persons who, having the control of the corporation by virtue of holding a majority of the shares, determined the amount of salaries they themselves should receive. And the said bill, saving the relief and discovery founded on said fraud, was dismissed. And the respondents aver that the said decree, dismissing so much of the bill, remains in full force unreversed and not appealed from. And the respondents further return, that after the making of the said decree the Phœnix Iron Company, a defendant in the said cause, filed an answer as to so much of the bill as had not been dismissed as aforesaid. That in and by said answer they answered the averments in the bill so far as it was retained and not dismissed, and set forth the facts relative to the making of the contract between the corporation and the firm, alleged to be fraudulent as to stockholders. And they also answered the averments of the bill relative to the ownership of shares and control of the corporation, by all persons who were partners in the firm of Clarke, Reeves & Co., and their interest and ownership in that firm, and as to the

salaries received by the owners of shares, and as to all dealings by them with the corporation, and as to the receipts of money by them from the corporation, and all other matters averred in the bill which the defendants were by the decree required to answer.

And that after the filing of the answer of the corporation respondent in this cause, and the pleas of the other defendants in that cause, the complainant in that cause elected to dismiss his bill, and the same was dismissed without prejudice.

3. And the respondents further return that by the said decree of the said Court it was finally adjudged that the complainant in virtue of his right as a stockholder was not entitled to an account of the assets, liabilities, receipts, or disbursements of the Phœnix Iron Company, to ascertain what were the actual profits of the company.

4. These respondents further return that by the said proceedings the relator had, before the filing of the petition in this case, filed a bill and obtained a decree compelling discovery of all dealings between the corporation and its officers, and the firm of Clarke, Reeves & Co., in which any officers or partners being stockholders of the corporation were interested, and that he had obtained a decree giving him a right to the same information as he now seeks to obtain by this writ, for the purpose of filing a bill for the same relief as he then sought.

5. And they further return that by the charter the management of the affairs of the Phœnix Iron Company and the discretion as to making dividends of profits, are committed to the board of directors, and that no right is by the charter or by-laws conferred on any stockholder to inspect the books or papers of the corporation, and by the by-laws of the company it is provided that the books of the company shall be open to the inspection of the president and any member of the board of directors. And it is provided by said by-laws that at the annual meeting of the stockholders the treasurer shall present a complete statement of his accounts for the year ending on the last day of March. And there is no other right given by the charter or by-laws to any stockholder to inspect the books' or inquire into the affairs or management of the corporation.

The relator, June 11th, 1885, demurred to this return, and after argument on the demurrer, the Court, October 17th, 1885, gave judgment for the relator. To the judgment of the Court for the relator on the demurrer, this writ of error was taken.

*R. C. McMurtrie* and *Wayne MacVeagh*, for plaintiff in error.—The real questions are: 1. Must a ground be stated for a right of inspection? 2. Are the averments of these grounds

[Phœnix Iron Co. *v.* Commonwealth.]

traversable?  3. If denied, does the same right exist as when they are admitted?

Where there are firms with common partners they deal with each other as strangers, and it is *a fortiori* that corporations may deal with their members: Bolton *v.* Puller, 1 Bos. & Pul., 539; Lindley, 939; Gordon *v.* Preston, 1 Watts, 388. The right to affirm or disaffirm contracts made with directors is in the body of stockholders who are not parties: Foss *v.* Harbottle, 2 Hare, 494, 497, 499; Lindley, 939.

" No one but the corporation can litigate the questions proposed to be litigated by the relator; and his right to compel them, or to use their name to do this, depends on whether the stockholders who have not participated in the fraud, elect to litigate or acquiesce : " Craig *v.* Craig, 83 Pa. St., 19.

*Samuel W. Pennypacker* and *John G. Johnson,* for defendant in error.—It is not at all necessary to our case that the facts should be either conceded or ascertained before the issue of the writ. This Court, resting upon the decisions in Rex *v.* The Merchant Tailors Co. 2 Barn., & Ad., 115, and Burton *v.* Saddlers Co., 31 Law Journal, 62, holds that we are entitled to inspect and see whether we can raise a case in our favor by examining the books: Commonwealth *v.* Phœnix Iron Co., 9 Out., 111.

A stockholder has a right to inspect the books and papers of his company unless the charter forbids : Id.

This right is to be exercised under certain limitations, which are necessary and essential to its existence. The merest reference to the authorities treating upon this subject shows clearly enough what are the right and the limitations. In Rex *v.* The Merchant Tailors Co., 2 Barn, & Ad., 115, TENTERDEN, C. J., says where " a particular grievance exists, the party may apply to the Court."

LITTLEDALE says " If they have any complaint to make, some suit should be instituted, some definite matter charged."

TAUNTON says " There must be some controversy, some specific purpose in respect of which the examination becomes necessary."

PATTERSON says " He must state a definite object."

In Burton *v.* The Saddlers Company, 31 Law Journal Q. B., 62, the Court says, " I take the result of the cases to be that a mandamus may go against a corporation to inspect and see whether a stockholder can raise a particular case in his favor by examining the books. It must be in my view a case with reference to some defined distinct dispute, as to which it appears that it might be to his advantage to see the minutes

of the corporation. . . . . . If I do not grant it I am preventing the applicant from starting his claim."

Mr. Justice CLARK delivered the opinion of the Court, October 4th, 1886.

This proceeding originated in an application by George H. Sellers, for a writ of alternative mandamus, against the Phœnix Iron Company, a manufacturing corporation, to compel the company to produce for inspection their books and papers, to enable him to prepare a stockholder's bill in equity, in respect of certain grievances, which the relator alleges he has sustained by the fraudulent mismanagement of the affairs of the company.

On the hearing of the rule to show cause, the defendants resisted the application on two grounds; first, that there was no right to relief, in this form, that the remedy was in equity; and second, if there was such right, the relator was not entitled under the facts. Affidavits were filed, in the court below as to the facts, on part of the defendants, and upon argument, the writ was refused. The record having been removed to this court, and the refusal of the writ assigned for error, upon due consideration here, the judgment was reversed, and the alternative writ allowed: Commonwealth *ex rel.* Phœnix Iron Company, 9 Out., 111. The plaintiff's case was presented in his petition; the special facts upon which the writ was allowed, were fully stated by our brother TRUNKEY, who delivered the opinion of the court.

In some of the states, we believe, the practice is, when the application is by formal petition, setting forth the grounds in detail, to determine the case upon the traverse of the petition, instead of the traverse of the return to the alternative writ, (9 Ohio St., 599) but the practice in Pennsylvania, especially since our statute of 14th June, 1836, (Purd. Dig., 990) is, to hear the case upon the matters alleged in the return.

The 19th, 20th, and 21st, sections provide as follows:

19. The jurisdiction aforesaid shall be exercised in the manner, and according to the rules hitherto observed and practised in the Supreme Court of this commonwealth, except so far as the same shall be altered by this act.

20. Whenever any writ of mandamus shall issue out of the Supreme Court, or out of any Court of Common Pleas, the person or persons who, by the laws of this commonwealth, ought to make a return to such (writ), shall make his or their return to the first writ of mandamus so issued.

21. It shall be lawful for the person suing or prosecuting any such writ, to demur, or to plead to, or traverse all or any of the material facts contained in such return; and the person

or persons making such return, shall reply, take issue or demur; and such other and further proceeding may be had thereon, except as hereinafter provided, as might be had if the person suing such writ had brought his action for a false return.

Upon the rule to show cause, the question was upon the sufficiency of the relator's suggestion—his right to the relief prayed for upon the footing of the facts therein stated—and notwithstanding the latitude allowed in the argument, the opinion filed and the judgment, awarding an alternative writ, clearly show that the case was so considered, by this court.

" Has the relator shown such facts as entitle him to an alternative mandamus," is the inquiry of the learned judge delivering the opinion of the court, and then follows a statement of the facts relied upon, as set forth by the relator.

The proper practice in cases of mandamus is very succinctly stated in Treas. Jeff. Co. *v.* Shannon, 1 P. F. S., 221, as follows: " The Act of Assembly plainly points out the course to be pursued when a proper suggestion is filed; if it contain the substance of a case for a mandamus, the course is, to issue an alternative writ commanding the defendant to perform the act required, or return his reason for not doing it. Upon this writ, the Act provides that the court shall allow the persons suing or defending such convenient time to make return, plead, reply, rejoin or demur as shall be just and reasonable." If, after issue and trial, the return be adjudged insufficient, then a peremptory mandamus will issue to compel the performance of the duty required. The Act contemplates regular issues of fact and law, as in other cases: 8 Casey, 218; 1 Wright, 237. See also Childs *v.* Comm'th, 3 Brewster, 194. Or, as stated in Keasy *v.* Bricker, 10 P. F. S., 9. " The ordinary practice is to direct an alternative mandamus to issue when the court is satisfied on affidavits that the writ should be issued as a matter of justice and right, to compel the performance of an act or duty, for which otherwise there would be no adequate remedy. This gives the party to whom it is directed an opportunity to do the act, or to show good reason at the return of the writ why he should not do it. He does this by making a return to the writ. It is at this point the pleadings in the cause begin. The return may traverse the facts alleged in the writ, or admitting them may avoid performance by stating sufficient facts in excuse. The relator may then demur, plead to, or traverse the facts set forth in the return. Such is the ordinary practice recognized by the Act relating to mandamus."

The alternative writ having been issued and served, the defendants entered of record their return, and the sufficiency of

that return is, by the demurrer, made the specific question for
determination now: Comm'th *ex rel.* Thomas *v.* Comm'rs of
Allegheny Co., 8 Casey, 221.

In mandamus, the relator must in all cases establish a spe-
cific legal right, as well as the want of a specific legal remedy;
Comm'th *v.* Rossiter, 2 Binn., 362.   When this cause was here
before, we held that in the absence of any restriction in the
charter, the right of a stockholder, in a trading corporation,
to an inspection of the books, papers and accounts was, in cer-
tain cases, and under certain limitations, incident to the rela-
tion of a stockholder to the company.   Of course a stock-
holder is bound by the corporate articles, where the right of
inspection of the corporate books and papers is qualified by
express stipulation; those who become members are subject to
the qualification.   But the doctrine of the law, as we then
said, is that the books and papers of the corporation, though
of necessity left in some one hand, are the common property
of the stockholders," and "unless the charter provides other-
wise, a shareholder has the right to inspect them and to take
minutes from them for a definite and proper purpose, at rea-
sonable times."   The facts set forth in the writ are, by the re-
turn in part denied, in part qualified, and in part admitted,
but assuming the correctness of the return as far as it goes,
and the facts set forth in the petition not traversed thereby,
the following facts may, we think, for the purposes of this case
be deemed admitted.

The Phœnix Iron Company was incorporated 27th April,
1855, for the purpose of engaging in mining and manufactur-
ing iron, &c., with a capital stock of $500,000, divided into
5000 shares of $100 each.   The relator, on the 29th Novem-
ber, 1866, became the owner of 238 shares of said stock, pay-
ing therefor $38,500, and he still owns 235 of the said shares.
David Reeves and Wm. H. Reeves at the time of the filing of
the petition, either individually or jointly, and as trustees,
were and for several years had been the holders of, and con-
trolled nearly all of the remaining shares.   The number of
shares held in trust, was 2875; these shares were held for the
children of Samuel J. Reeves, deceased, viz: Elizabeth H.
Carson, Clara R. Tyson, Jennie J. Reeves, and the said David
and William H. Reeves, each being entitled to one fifth of
2875 shares, or 575 shares.   Since these proceedings were in-
stituted, these trust shares have been divided, and transferred
to the several persons entitled; David Reeves and Wm. H.
Reeves, however, severally and jointly are still the owners, of
3033 of said shares.

The board of directors consists of five persons, David Reeves,
president; William H. Reeves, Carroll S. Tyson, John Griffen

and George Gerry White; the last three named being each the owner of but a single share of stock.

The works of the company are among the most extensive in the country, and the business during the whole period of its existence has been in a highly prosperous condition. The business of the company from 1870 to 1880 averaged $2,000,-000 per annum. In 1879 it amounted to $2,705,036.11, and in 1880 to $2,448,668, and the average profit upon this trade is estimated to be at least fifteen per cent. The charter of the company provides for dividends of the actual net profits to be declared, at the discretion of the directors, but no dividends have been declared for a period of nine years; the capital stock represents an investment of about six times its par value, but the real estate of the corporation is still subject to a mortgage of $1,150,000, whilst a portion has been recently conveyed to secure an alleged indebtedness of 322,000, in which the said David and William H. Reeves are themselves interested.

The Phœnix Iron Co., prior to 1868, had been engaged not only in the business of the manufacture of iron materials for bridges, viaducts, &c., but the erection of such structures.

The firm of Clarke, Reeves & Co., consisting of Thomas C. Clarke, David Reeves, Jr., John Griffen, and others, was engaged as engineers and contractors, in designing and erecting structures made partially or wholly from iron materials, such as the Phœnix Iron Co. made. In the year 1868 the Phœnix Iron Co. ceased to act as iron builders, and, excepting in one or two instances, confined its operations to the manufacture of iron building materials. In October, 1870, the Phœnix Iron Co. entered into an agreement with Clarke, Reeves & Co., by the terms of which the company agreed and became bound, permanently to withdraw from the business of construction, and to confine their operations to the manufacture of materials alone; Clarke, Reeves & Co., on the other hand, agreed and became bound to pursue the business of construction, to purchase at certain rates their materials wholly from the Phœnix Iron Co., and at the completion of each contract to pay to the Phœnix Iron Co. one half of the net amount which they might receive by reason of the contract. This contract, originally in parol, took effect from 22d October, 1870, but was not reduced to writing until 21st May, 1871. At the time it was originally agreed upon, no member of the firm of Clarke, Reeves & Co. had any interest in the corporation; the shares were then held as follows: David Reeves, the elder, 2500; Samuel J. Reeves, 2262; George H. Sellers, 238, nor did the relator, who was then consulted in the matter, make any objection to it; since that time, however, he has not been at any time consulted, as to the renewal of the contracts from year to year.

David Reeves, the elder, died in March, 1871, however, and David Reeves, the younger, who was of the firm of Clarke, Reeves & Co., became entitled as legatee to fifty shares. Until December, 1878, none of the firm of Clarke, Reeves & Co. had any of the corporate shares of the Phœnix Iron Co., excepting David Reeves, who had the fifty shares mentioned, and John Griffen, who at the request of David and Samuel J. Reeves, held one share each.

In December, 1878, Thomas J. Reeves died, and thereafter David Reeves and W. H. Reeves, his sons, held the controlling interest in the company, and it is charged that, through their votes and those of the other directors whom they elect, and who have but a merely nominal interest in the corporation, they have and exercise absolute control over all the affairs of the corporation, and that they unjustly and intentionally manage it in such a way as to advance their own personal interests, to the injury of the relator; that the officers and directors of the corporation have abused the discretion conferred upon them, in refusing to declare dividends of the profits as contemplated in the charter; that the profits and estate of the corporation are illegally absorbed by the individuals who control it; in part, through the instrumentality of the contract with Clarke, Reeves & Co.; in part, by voting themselves large salaries; in part, by the conveyance to themselves, in trust, with power of sale, of a large portion of the real estate of said corporation, to secure indebtedness in which they are themselves immediately interested; and otherwise.

At a meeting of the stockholders, Sellers asked for information as to the affairs of the company, and the directors refused either to permit the minutes to be read or the papers to be examined. His request to the president that a time and place might be named for such an examination of the books as would give him the information proper to a stockholder, was refused, and a similar demand, made of the officers and directors at the office of the corporation during business hours, was in like manner refused. The relator states that his purpose is to file a bill in equity, to obtain relief against the abuses complained of.

Under the circumstances mentioned, and for the purposes stated, we are of opinion that according to our ruling when the case was here before, the relator is clearly entitled to an examination of the books and papers of the company. Such a right is of course not to be exercised to gratify curiosity, or for speculative purposes, but in good faith and for a specific, honest purpose, and where there is a particular matter in dispute, involving and affecting seriously the rights of the relator as a stockholder.

[Phœnix Iron Co. v. Commonwealth.]

We cannot say that the matters involved have already been adjudicated, in the decree of the Circuit Court of the United States. We cannot anticipate the bill which the relator may bring. What specific relief he may seek can now only be the subject of conjecture; it will be time enough to determine the question of *res adjudicata* when the case is presented. The question now is, as to the relator's right to inspect the books; he avers that he purposes filing a bill in equity against the corporation and its officers, and that it is necessary that he see the books and papers in order that he may correctly state the facts now concealed from him. As we said in the former opinion of this Court, upon learning the facts he may abandon his purpose for want of matter of complaint. He desires "to inspect and see whether he can raise a particular case in his favor by examining the books. He is a stockholder, to a very considerable amount, in what appears to be a prosperous and highly profitable trading corporation; for nine years, although large profits have admittedly accrued, no dividends have been declared; the profits are in no way accounted for; he is denied all access to the books and papers for information. At a regular stockholders' meeting the minutes, because of his presence, were suppressed, the examination of papers prevented, and the meeting adjourned whilst the relator held the floor asking for information. A stockholder in a trading corporation must certainly have some rights which a board of directors should respect. Sellers was not bound to accept the mere statement of the board, whether under oath or otherwise, as to the contents of the books, &c. He had a right to a reasonable personal inspection of them, and with the aid of a disinterested expert might make such extracts as were reasonably required in the preparation of the bill he purposed to bring.

The relator, we think, has a clear right under the writ and return to the relief he asks, and it is plain that he has no specific legal remedy for the enforcement of that right; and the existence of a supposed equitable remedy is not a ground for refusing the mandamus: Commonwealth *ex rel.* Thomas *v.* Commissioners of Allegheny Co., 8 Casey, 223. The requirements of the writ of course can cover only such books and papers as are actually in existence, and only such of those as may contain information upon the subjects specified.

The judgment is affirmed.