# Williamsport *v.* Citizens' Water & Gas Company, Appellant.

*Equity—Jurisdiction—Remedy at law—Mandamus—Action to compel disclosure of records—Cities—Corporations—Water companies—Acquisition of water company by city—Act of April 29, 1874, P. L. 73—Juries—Special verdicts—Service—Act of June 8, 1893, P. L. 345—Appeals—Remission of cause with direction to transfer to law side of court below—Act of June 7, 1907, P. L. 440.*

1. Mandamus is the ordinary and appropriate remedy to compel disclosure from corporations at the instance of a plaintiff with a special interest, desiring information contained in books, papers and records, so as to be in a position to assert a legal right in or to the property of the corporation.

2. Where the parties to a litigation, in which there is a jurisdiction by mandamus have sought relief in equity, unless the court is satisfied from the nature of the questions involved that they can be appropriately and finally determined in chancery and that complete justice to all parties can there be had, the dependency of the proceedings in equity will not oust the jurisdiction by mandamus, particularly if the latter remedy affords more complete justice than could otherwise be obtained.

*Jury—Mandamus—Special verdicts.*

3. Trial by jury has become part of our mandamus system as administered in the common pleas, and such trials are conducted as in other actions at law, but the rule that the jury always have the right to judge for themselves whether they shall find a general or special verdict does not prevail. The whole structure of the Acts of June 14, 1836, P. L. 621, and June 8, 1893, P. L. 345, indicates that although jury trials are contemplated in mandamus they are for the purpose of ascertaining the facts for the guidance of the court in determining the question of issuing the peremptory writ.

4. A review of the common law and the statutes shows that, while trial by jury has become part of our system in administering the law of mandamus, the court may, if it deem such a course wise, submit special issues instead of the general issue, and thereby secure special findings on the essential and controlling points, raised by the pleadings and covered by the evidence. All of which couples the benefits of the special findings afforded by an equity proceeding with the advantages of trial by jury.

5. Mandamus will never issue for a vain or useless purpose or to satisfy mere curiosity.

6. A city claiming the right to acquire the works and property of a water company under clause 7, sec. 34, of the Act of April 29, 1874, P. L. 73, is not entitled to maintain proceedings in equity to compel such company to render to the city an itemized statement of the net cost of erecting and maintaining its works, with a detailed statement of dividends declared, and to exhibit such books, papers and vouchers as might be necessary to verify the statements so made, mandamus being the ordinary and appropriate remedy to compel corporations to disclose information of such a character.

7. In such a case, by reason of the defendant being a corporation and the fact that service was presumably made, in compliance with the equity rules, "in the mode prescribed by law for the service of a writ of summons upon such corporation," which is consistent with the mode prescribed in sec. 5 of the act of 1893 for the service of a writ of alternative mandamus, there can be no objection to the appellate court remitting the record with directions to transfer the cause to the law side of the court, all costs to abide the final determination thereof in the court below, in compliance with sec. 3 of the Act of June 7, 1907, P. L. 440.

8. In such a case the paramount issue in the preliminary mandamus proceedings would be the right of the city to have access to the books and records of the water company for the purpose of securing the data of the cost and maintenance of the water company's plant and the dates and amounts of dividends by it theretofore declared, and also, if desired, to make a physical examination of its works and property. Since a mandamus will never issue for a vain or useless purpose or to satisfy mere curiosity, this first proceeding would involve certain subsidiary issues, as, for instance, the question of the city's financial ability under the law to purchase the defendant's plant, and this question, in turn, would raise the issues as to the assessed value of the city's real estate and the amount of its indebtedness, or, in other words, its borrowing capacity, and also, necessarily, the issue as to the cost of the water company's plant, its maintenance and the dividends declared.

9. Where, in such a preliminary mandamus proceeding, the evidence plainly shows that the works and property of the water company total a value greatly in excess of the amount which the city could raise under the law, the city is not in position to make the purchase and hence is not entitled to a mandamus to force the water company to submit to an investigation of its books and properties, but where it can be shown that the probable price which would have to be paid for the water company's property and the borrowing capacity of the plaintiff city approximate one another, the mandamus will issue to enable the city to make its investigation, and, after securing sufficient knowledge to qualify it to submit an intelligent offer, in accordance with the act of 1874, if that offer should be refused, the plaintiff could demand another mandamus

to compel the water company to convey its plant to the city upon payment of the estimated price; the water company could then take issue on the figures submitted by the city, and there would be a common law trial to adjudge the issues thus raised.

*Evidence—Best evidence rule—Mandamus—City—Acquisition of water company—Cost of works—Documentary evidence.*

10. While secondary evidence cannot be admitted in substitution for primary evidence, yet where the evidence offered is primary or original in its character, it cannot be excluded because there might have been introduced other primary evidence that is corroborative or stronger and more conclusive. Under such circumstances it is the weight of the evidence, not its admissibility, that is involved. It is essential to the exclusion of evidence under the best evidence rule that the evidence not produced should be not only more direct, satisfactory and conclusive than that offered, but should be also higher in grade or degree.

11. In a preliminary mandamus proceeding against a water company by a city desirous of exercising its statutory right of purchasing the works and property of the water company, wherein one of the issues raised is the prima facie financial ability of the city to make the purchase, if the water company sees fit to rely on testimony other than its written records in order to show the cost of its plant, and such testimony is otherwise competent evidence, it cannot be declined simply because the trial court assumed that the water company's books and papers would better show the actual cost price.

*Equity—Corporations—Control by courts—Adequate remedy at law—Act of June 16, 1836, P. L. 784.*

12. Although paragraph 5 of sec. 13 of the Act of June 16, 1836, P. L. 784, gives to the courts "the supervision and control of all corporations other than those of a municipal character," this has never been construed to mean that the ordinary and adequate remedies at law are superseded by equity as against such corporation, and where there is an appropriate remedy at law against a corporation, even though equitable jurisdiction has been invoked, the bill will be dismissed.

Argued March 13, 1911. Appeal, No. 317, Jan. T., 1910, by defendant, from decree of C. P. Lycoming Co., March Term, 1908, No. 3, on bill in equity in suit of The City of Williamsport v. The Citizens' Water & Gas Company. Before FELL, C. J., BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to compel the defendant water company to

render to the plaintiff city an itemized statement of the net cost of erecting and maintaining its works, together with a detailed statement of dividends declared, and to exhibit such books, papers and vouchers as might be necessary to verify the statements so made.  Before HART, P. J.

The bill avers: (1, 2, 3) the incorporation of the borough of Williamsport on March 1, 1806, and its erection into a city on January 15, 1866.  (4) The incorporation of the Lycoming Gas & Water Co. under special Act of March 24, 1865, P. L. 767.  (5) The provisions of sec. 7 of said act authorizing the company to erect its necessary works "for the purpose of supplying the inhabitants residing within the limits of the territory, here described, and parts adjacent thereto," sufficient gas and pure water, and describing the territory referred to.  (6) Section 9 of the act, as to rates.  (7) That the property and franchises of this company were sold January 8, 1880, and the purchasers reorganized the company under the Act of May 25, 1878, P. L. 145, as the Citizens' Water & Gas Company, accepting the provisions of art. XVI of the constitution and the provisions of the General Corporation Act of April 29, 1874, P. L. 73.  (8) That clause 7 of sec. 34 of the act of 1874 provides: "It shall be lawful at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city or district, into which the said company shall be located, to become the owners of said works and the property of said company, by paying therefor the net cost of erecting and maintaining the same, with interest thereon, at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared. . . ."  (9) That defendant company and its predecessor have supplied water to the city of Williamsport and its inhabitants for more than twenty years.  (10) That neither the city nor the borough has at any time constructed waterworks.  (11) That on June 1, 1907, the councils of Williamsport passed the following resolution: "Whereas, the Williamsport Water Company and the Citizens' Water & Gas Com-

pany have for more than twenty years supplied water to the public and the city; and whereas, it is the desire of the councils that the city shall become the owner of the works and properties of these companies under the provisions of clause 7 of sec. 34 of the act of April 29, 1874; therefore, resolved: 1. That the city declares its intention to become the owner of the works and properties of the companies and hereby agrees to pay therefor the net cost of erection and maintenance, with interest thereon at the rate of ten per centum per annum, deducting from the interest all dividends theretofore declared, provided, that the cost to the city of Williamsport, ascertained as above set forth, shall not, when taken together with the existing indebtedness of said city, exceed seven per centum of the valuation of the property in the said city taxable for county purposes; and provided further, that the electors of the said city shall assent, at a public election to be held for that purpose, to the increase of additional indebtedness of said city (not exceeding, when taken with the existing indebtedness, seven per centum of said assessed valuation) to a sum sufficient to effectuate the purchase. 2. The companies are requested to exhibit to the light and water committee of the city councils of the city of Williamsport a detailed and itemized statement showing the net cost of erecting and maintaining the works and property of the said company, as well as the amounts and dates of payment of all dividends heretofore declared, together with such other information as will enable said light and water committee to verify the statement or statements so made. 3. If the companies neglect or refuse to comply with the request for twenty days after notice, the light and water committee are to take legal steps to compel the companies to give the information demanded." (12) That on July 12, 1907, a demand was made upon the defendant reciting the above resolution and requiring a statement in writing showing the net cost of erecting the waterworks and property of the Williamsport Water Company and the Citizens' Water & Gas Company, the net cost of main-

taining the works and property of said companies, the
amounts and dates of the payments of all dividends there-
tofore declared, the date of completion of the waterworks
of each of the said companies, the general character of the
maintenance of the works and property, and such other
information as will enable the committee to verify the
statements above required.  (13) That on July 13, 1907,
the two companies by their attorneys answered declining
to furnish the information, giving as a reason that it was
obvious that the city did not have enough borrowing
capacity under the law to raise a sufficient amount of
money to make the purchase.  (14) That on November 1,
1907, the plaintiff's solicitor had been instructed to proceed
against the two companies.  (15) That the refusals of the
desired information rendered it impossible for the city
authorities to take intelligent action in the premises.  The
bill ends with a prayer for the specific relief indicated at
the beginning of this report, and with a prayer for general
relief.

The defendant company demurred, denying the juris-
diction of the court to proceed in equity since there was an
adequate remedy at law by mandamus.  The demurrer
was overruled.  The defendant then answered, (1, 2, 3)
admitting the incorporation of the borough and of the city
of Williamsport.  (4) Admitting the incorporation of the
original water company and averring certain amendments
to its charter whereby it was authorized to make a loan of
$100,000 to complete its works, in addition to a then exist-
ing indebtedness of $50,000.  (5, 6, 7, 8 and 9) Admit-
ting corresponding paragraphs of bill, and averring that
the defendant company had not only supplied water
in Williamsport but also in the borough of Du Boiston
and in Loyalsock township for more than twenty years.
(10) While not denying corresponding paragraphs, aver-
ring that the plaintiff had owned 400 shares of stock of the
Williamsport Water Company and had had a representa-
tion of two members upon the board of managers of said
corporation from 1856 to 1873 when the stock was sold.

(11) Calling for proof of matters in corresponding paragraph. (12, 13) Denying that either the demand or the refusal set forth in the corresponding paragraphs of the bill was made upon or by the defendant company alone; averring that the demand was made upon and the reply by the defendant company and the Williamsport Water Company jointly; and calling attention to the fact that the councilmanic resolution referred to these companies jointly and not to either one of them separately. (14) Calling for proof of matters in corresponding paragraph. (15) Denying that the answer of the two companies averred in the corresponding paragraph of the bill prevents intelligent action by the plaintiff in the matter of acquiring the works and property of the defendant. (16) Averring that on September 3, 1907, before the bill was filed, the plaintiff, pursuant to a councilmanic resolution, requested its city engineer to furnish data and estimates of the cost of the works and property of the two water companies; that the engineer rendered such a report stating that he had had complete access to "all maps, plans, and data" of the two companies, and that the report "furnished a very reliable basis for the city to work upon," and further that "the prices and areas of the land included in this report are matters of record;" that the total cost estimated by the engineer was $858,221.55, not including the cost of maintenance. (17, 18, 19) That the defendant company, and its predecessors, had begun the construction of its work and the laying of its mains in 1865 and had continued with them to the present time, always supplying fresh and pure water to the places before stated. (20) That in order to protect the water supply from pollution and "acceding to the demands of the board of health of the City of Williamsport" the two companies had purchased and owned large tracts of land, in the case of the defendant amounting to 5,017 acres and of the Williamsport Water Co. to 2,020 acres. (21, 22) That when the report was made by the city engineer, on September 12, 1907, and at the time of the filing of the bill, the defendant owned and operated the prop-

erty set forth in the paragraphs, and that the value of such property greatly exceeded the borrowing capacity of the plaintiff. (23) That prior to the resolution of June 1, 1907, and to the filing of the bill, the plaintiff had knowledge that the defendant had become the owner of land and other properties in Armstrong township, largely at the command of the aforesaid board of health, which property was acquired at a cost greatly exceeding the borrowing capacity of the plaintiff city. (24) That on July 12, 1907, when the demand was made, and at the time of the filing of the bill, the last assessed valuation of taxable property within the plaintiff city was "$9,578,853, and its existing indebtedness $545,561.54, which indebtedness could not be increased more than $124,958.17, without violating sec. 8, of art. IX of the constitution; a financial condition known to the plaintiff." (25) "That the plaintiff . . . . having knowledge before filing its bill that the cost of a portion of the works and property of the company when taken together with the existing indebtedness of the city, very largely exceeded seven per centum of the valuation of its taxable property, it was unnecessary and useless for her to proceed further and to require from the company the statement demanded; and hence the relief prayed for . . . . was inquisitorial and an unreasonable search, against . . . . sec. 8 of art. I of the Constitution." (26) Calling attention that the resolution of the city councils declared its intention to purchase the works of the two companies provided that the city had sufficient borrowing capacity, and further calling attention to the fact that the report of the city engineer showed that the probable cost of the work would exceed the borrowing capacity by more than $700,000, and averring for that reason the proceedings against it were an unlawful attempt to enforce an unreasonable search. (27) Averring that because the resolutions of councils were aimed against the two companies jointly the suit was improperly brought against the defendant company alone. (28, 29) A general denial of the rights of the plaintiff and a specific denial of the jurisdiction of the

court in equity, and an averment that there was an adequate remedy at law by mandamus.

When the case came on to be heard the court below found the historical facts concerning the several corporations as averred in the bill and admitted in the answer. The facts as to the resolutions of councils and the demand upon the companies and their refusal, were found substantially as averred in the bill, but the court found that the demand and refusal were by and against the two companies jointly as averred in the answer. Further, that the two companies maintain the same headquarters in the city of Williamsport where each of them "transacts its principal business" and that they have the same office.

The court refused, "as irrelevant, incompetent and immaterial to the issue being tried," requests for findings submitted by the defendant concerning the borrowing capacity of the city, the investigations made by its engineer and the value placed by him upon the defendant's works, the general details of the property owned by the defendant and the fact that their value exceeded the borrowing capacity of the plaintiff, and concerning the value of real estate recently purchased by the defendant and that it exceeded the borrowing capacity of the plaintiff, as contended for in the answer of the defendant.

The court's conclusions of law were: (1) That clause 7, sec. 34, of the Act of April 29, 1874, P. L. 73, applied in this case and that the plaintiff had the right to acquire the defendant's works thereunder. (2) That the relief prayed for by the plaintiff was not inquisitorial and did not constitute an unreasonable search in violation of the constitution. (3) That the court had jurisdiction. (4–5) That in the absence of proof on the part of the defendant that it was possessed of no written evidence or data of the costs of the construction and maintenance of its water plant and as to dividends declared, no secondary evidence thereof was competent, and "for this reason we have excluded the testimony of the character here indicated, which we received." (6) That the only question at issue was the

right of the plaintiff to obtain from the defendant "a statement, or data, of the cost" of construction and maintenance and of dividends, and "access by the city to its books and records for the purpose of making such statement and data." (7) That to entitle the plaintiff to the relief prayed for "it is not necessary that she first show her ability to make the purchase," or "bind herself to make the purchase." (8) That the plaintiff was entitled to the information and the relief prayed for. (9) That the plaintiff had no adequate remedy at law. Concerning conclusions (4, 5 and 7), the opinion states: "Whilst we opened the door widely and permitted the defendant to introduce testimony showing the assessed value of taxable property of the city for the year 1907, and also to show by an expert witness his estimate of the cost of erecting the works of the company defendant, we are convinced, upon more careful consideration of the question, that this evidence is incompetent and irrelevant to the issue here being tried. This evidence as to the cost of erecting the works is not the best evidence, for the reason that the defendant company is presumed to be possessed of the actual net cost of the erection and maintenance of its works. . . ."

On July 11, 1910, the court decreed: "That the Citizens' Water and Gas Company, defendant, its president, Henry D. Brown, and its secretary and treasurer, William H. Bloom, render to the Light and Water Committee of the Councils of the City of Williamsport, plaintiff, a detailed and itemized statement showing the net cost of erecting and maintaining the works and property of said . . . . Company, the amounts and dates of its various expenditures, as well as the purposes for which the same were made, the amounts and dates of payment of all dividends heretofore declared, together with such other information and exhibition of books, papers and vouchers as will enable said committee to verify the statements so made."

*Errors assigned* were: (1– 3, 23, 25) holding that the

court had jurisdiction in equity; that there was no adequate remedy at law; same rulings on the demurrer; the refusal to dismiss the bill; the decree entered. The remaining assignments were to the answers given to the defendant's requests for findings, and to the court's conclusions of law, above referred to.

*C. LaRue Munson*, of *Candor & Munson*, for appellant.— The plaintiff has an adequate remedy at law by the statutory writ of mandamus: Com. v. Phœnix Iron Co., 105 Pa. 111; Neubert v. Armstrong Water Co., 211 Pa. 582; Mercur v. Media Elec. Light, Heat & Power Co., 19 Pa. Superior Ct. 519; Easton Borough v. Lehigh Water Co., 97 Pa. 554; Mount Moriah Cemetery Assn. v. Com., 81 Pa. 235; McClintock v. Young Republicans, 210 Pa. 115; Patterson v. Lane, 35 Pa. 275.

No power is given by the act of 1836 to courts of equity over corporations other than the ordinary practice of a court of chancery: Jenkins v. Baxter, 160 Pa. 199; Caldwell v. East Broad Top R. R. Coal Co., 169 Pa. 99; Gallagher v. Fayette County R. R. Co., 38 Pa. 102; Dimmick v. Delaware, etc., R. R. Co., 180 Pa. 468; Wolf v. Glassport Lumber Co., 210 Pa. 370.

*Frank P. Cummings*, city solicitor, for appellee.—That there might have been a remedy at law is not sufficient to oust the jurisdiction; the remedy at law, in order to oust the jurisdiction must be an adequate one and reasonably convenient: Warner v. McMullin, 131 Pa. 370; Mercur v. Media Elec. Light, Heat & Power Co., 19 Pa. Superior Ct. 519; Douglass v. McLean, 25 Pa. Superior Ct. 9.

OPINION BY MR. JUSTICE MOSCHZISKER, July 6, 1911:

The controlling question in this case is as to the appropriate remedy, and we have reached the conclusion that it lies not in equity but at law. The right of the plaintiff city and the obligation of the defendant cor-

poration arise under clause 7, sec. 34, of the Act of April 29, 1874, P. L. 73, which provides: "It shall be lawful at any time after twenty years from the introduction of water or gas, as the case may be, into any place as aforesaid, for the town, borough, city or district into which the said company shall be located, to become the owners of said works, and the property of said company, by paying therefor the net cost of erecting and maintaining the same, with interest thereon, at the rate of ten per centum per annum, deducting from said interest all dividends theretofore declared: . . . . Provided . . . . that the court of common pleas of the proper county shall have jurisdiction and power upon the bill or petition of any citizen using the gas or water of any of said companies to hear, inquire and determine as to the charges thereof for gas or water so furnished, and to decree that the said bill be dismissed, or that the charges shall be decreased, as to the said court may seem just and equitable, and to enforce obedience to their decrees by the usual process." The act fails to provide any special remedy to carry this section into effect other than that in the proviso just quoted, and while the legislature saw fit expressly to give equity jurisdiction to the extent therein set forth it refrained from going further.

Mandamus is the ordinary and appropriate remedy to compel corporations to disclose information such as the plaintiff claims to be entitled to: Com. ex rel. v. Phœnix Iron Co., 105 Pa. 111; Phœnix Iron Co. v. Com. ex rel., 113 Pa. 563; Neubert v. Armstrong Water Co., 211 Pa. 582. In each of these cases the application was by one claiming the right to inspect books and papers so that he might secure accurate knowledge of the affairs of a corporation; the plaintiff had the interest of a stockholder who desired to be placed in a position to assert his legal rights in an action which he proposed to bring against the corporation. In the present case the plaintiff has the interest of one possessed of a prima facie right under the act of 1874 to acquire the property of the defendant, which right it desires to be placed in a position to assert

in an action proposed to be brought against the corporation. In common they are instances of a plaintiff with a special interest, desiring information contained in books, papers and records, so as to be in a position to assert a legal right in or to the property of a corporation, and there is no apparent reason why the same remedy should not apply here as in the cases cited.

But the appellant contends that the equitable remedy invoked by it is amply sufficient to the cause, and that in order to oust the jurisdiction of equity it is not only necessary to point to a legal remedy, but it must be a convenient one. Where the parties have already sought relief in equity, unless the court is satisfied from the nature of the questions involved that they can be appropriately and finally determined in chancery and that complete justice to all parties can there be had, the dependency of the proceeding in equity will not oust the jurisdiction by mandamus, particularly if the latter remedy affords more complete justice than could otherwise be obtained: High on Extraordinary Legal Remedies, secs. 21–22. We shall endeavor to show, that equity does not give a remedy that will afford complete and final justice in a case of the character of the one at bar, and furthermore that the remedy by mandamus is no more inconvenient than a proceeding in equity.

Originally at the common law of England, mandamus being a high prerogative writ, no return was allowed, and hence jury trials were not a part of the practice: for the verdicts of juries could not control the hand of the crown or of its officers: Tapping on Mandamus, chap. 1, p. 57. The practice was changed from time to time by acts of Parliament allowing answers, returns and other pleadings. Special provisions for jury trials were made by these various acts, among them statute 9 Anne, chap. 20, enlarged by 3 and 4 Wm. IV, chap. 42, secs. 24, 25, but a power was reserved to the courts to "give judgment according to the very right and justice of the case:" Tapping on Mandamus, chap. 7, pp. 383 et seq. It would seem from Rob-

erts' Dig. of Statutes, p. 384, that this statute of 9 Anne,
and by inference its supplements above referred to, were
part of our common law, but in the year 1831, in Com. v.
Mitchell, 2 P. & W. 517, 518, referring to the statute,
GIBSON, C. J., said, "With us, it (mandamus) is supposed
to stand very nearly, as it did in England before the stat-
ute 9 Anne, chap. 20." However this may be, first by an
act of 1722, then by the general mandamus Act of June 14,
1836, P. L. 621, and later by that of June 8, 1893, P. L. 345,
the substance of these English statutes was re-enacted
into our law, and we established our own practice and
pleading, which, while subject to some of the common-
law rules, is not controlled absolutely by them. Trial
by jury has become part of our mandamus system as ad-
ministered in the common pleas, and such trials are con-
ducted as in other actions at law, but the rule that the
jury always have the right to judge for themselves whether
they shall find a general or special verdict (Chambers v.
Davis, 3 Wharton (Pa.) 40, 47; Patterson v. Kountz,
63 Pa. 246, 252), does not prevail. The whole structure
of our acts of 1836 and 1893 indicates that although jury
trials are contemplated they are for the purpose of ascer-
taining the facts for the guidance of the court in deter-
mining the question of issuing the peremptory writ. The
fact that by secs. 32 and 33 of the act of 1893 the Supreme
Court is given the general power in mandamus to decide
issues of fact without a jury, is a legislative recognition
that such proceedings are not necessarily subject to all
of the rules regulating the trial of common-law cases; for
if they were, the legislature would have been obliged to
provide a jury for the trial of these cases in the Supreme
Court. Again, sec. 21 of the act of 1893 evidently had in
view that there might be cases where the issues of fact
would be decided by the common pleas without the aid
of a jury. A review of the common law and the Pennsyl-
vania acts show that, while trial by jury has become part
of our system in administering the law of mandamus,
the court may, if it deem such a course wise, submit special

issues instead of the general issue, and thereby secure special findings on the essential and controlling points raised by the pleadings and covered by the evidence. All of which couples the benefits of the special findings afforded by an equity proceeding with the advantages of trial by jury.

Under our practice the initial steps in a statutory proceeding by mandamus and in a proceeding in equity are much alike, and, if anything, the practice in the former is more simple than in the latter. In a case like the present the applicant for the writ presents a petition "setting forth the facts upon which he relies for the relief sought" and "the act or duty whose performance he seeks." If the "petition presents the substance of a case for mandamus," the court directs the writ to issue in the alternative form. The defendant then files his answer or return, and issue may be joined thereon, as directed in the act of 1893, supra. When the case comes on for trial the issues of fact which are thus raised may be submitted to the jury, or by agreement of the parties they may be found by the court; or if the parties so desire, certain of them may be submitted to the jury and others may be reserved for the decision of the court: Treasurer of Jefferson County v. Shannon, 51 Pa. 221; Com. ex rel. v. Commissioners, 32 Pa. 218; Seabolt v. Northumberland County Commissioners, 197 Pa. 110; Kell v. Rudy, 1 Pa. Superior Ct. 507; Neubert v. Armstrong Water Co., 211 Pa. 582. As we have already pointed out, there is nothing in the law to prevent special findings by the jury upon the issues submitted to them, and in fact, this practice was to a certain extent, pursued in Neubert v. Armstrong Water Co., 221 Pa. 582, 586.

All issues must be disposed of before final judgment (Smith v. Com., 41 Pa. 335; Com. ex rel. v. Warwick, 185 Pa. 623), but the issuance of the writ is left within the control of the court: Com. v. Mitchell, 2 P. & W. 517; Com. v. Commissioners, 1 Wharton, 1. The law does not say that after the findings or verdict the court is absolutely

obliged to issue the mandamus; on the contrary the act of 1893, supra, sec. 22, provides: "Whenever . . . . judgment is given for plaintiff the court may award that a peremptory mandamus shall issue in that behalf and shall enter judgment for damages and costs, and thereupon such peremptory writ of mandamus may be issued accordingly at any time after twenty days from the signing of the judgment, and not before, unless the exigence of the case, in the discretion of the court, requires it, in which event the court may direct that such writ shall issue forthwith." Section 26 provides, "Defects in substance in the alternative writ may be taken advantage of at any stage of the proceedings. Amendments may be allowed as in other civil actions save as hereinafter mentioned"; and section 28, "The peremptory writ, though issued, may be superseded or quashed for such causes as to the court may seem just, but no amendment thereto shall be allowed." Thus the court can either issue the writ or withhold it, or, the writ having issued, the court may supersede or quash it. These provisions practically leave the question of the issuance of the peremptory mandamus and its form within the control of the court, subject always to the well settled principles which have been established by the authorities and to the regulations fixed by legislative enactment.

On the whole the remedy by mandamus is as conveniently applicable to a case like the present as equity, and it has points of advantage not possessed by the latter; for if it should be admitted that equity has jurisdiction, a chancellor might well claim the right to carry the proceedings to final conclusion, which would deprive the defendant of the right to trial by jury on the issue of the net costs of its works and property, or, in other words, the price which it would be obliged to accept from the plaintiff as the value of its plant. On the other hand, in the proceeding by mandamus, should it be decided in the first instance that the plaintiff was entitled to examine the books, papers and property of the defendant, and

after such examination had been made and the plaintiff had secured sufficient knowledge to estimate the price which under the law it would have to pay for the works, should an offer of that price be refused, the next step would be the application for another writ of mandamus to compel the conveyance of the waterworks, etc., upon payment of the price offered. The defendant could then raise any issues of fact which it deemed essential to a proper determination of the case, and the issues, particularly those concerning the amount to be paid by the city to the water company, would go to a jury, as in other instances where property is taken by the state or a municipality.

In the first mandamus proceedings the paramount issue would be the right of the city to have access to the books and records of the water company for the purpose of securing the data of cost and maintenance of the defendant's plant and the dates and amounts of dividends by it theretofore declared, and also, if desired, to make a physical examination of its works and property. But since a mandamus will never issue for a vain or useless purpose (High on Extraordinary Legal Remedies, chap. 1, sec. 14; Com. v. Commissioners, 1 Wharton, 1; Cristman v. Peck, 90 Ill. 150), or to satisfy mere curiosity (Com. ex rel. v. Phœnix Iron Co., 105 Pa. 111, 116; Phœnix Iron Co. v. Com. ex rel., 113 Pa. 563, 572; Bloede Co. v. Bancroft & Sons Co., 98 Fed. Repr. 175, 189), this first proceeding would involve certain subsidiary issues, for instance, Is the city financially able under the law to purchase the defendant's plant? And this question would raise the issues as to the assessed value of the city's real estate and the amount of its indebtedness, or, in other words, its borrowing capacity, and also, necessarily, the issue as to the cost of the plant, its maintenance and the dividends declared. The plaintiff would have a prima facie right under the statute to make an investigation of the proper sources of knowledge to ascertain these latter points; therefore, it would be entitled to an alternative writ. In

making return to that writ, however, the defendant could raise all the issues indicated, and since, in order to raise these issues, the water company would be obliged to assert an affirmative, the burden of proof would be upon it: 2 Spelling on Extraordinary Remedies, sec. 1696; Mercur v. Electric Light, Heat & Power Co., 19 Pa. Superior Ct. 519, 524.

If in this preliminary proceeding the defendant saw fit to rely on testimony other than its written records in order to show the cost of its plant, and such testimony was competent evidence, it could not be declined simply because the court assumed that the water company's books and papers would better show the actual cost price. "While secondary evidence cannot be admitted in substitution for primary evidence, yet where the evidence offered is primary or original in its character, it cannot be excluded because there might have been introduced other primary evidence that is corroborative or stronger and more conclusive. Under such circumstances it is the weight of the evidence, not its admissibility, that is involved. In brief, it is essential to the exclusion of evidence under the best evidence rule that the evidence not produced should be not only more direct, satisfactory and conclusive than that offered, but should be also higher in grade or degree:" 17 Cyc. 466; Executors of Shoenberger v. Hackman, 37 Pa. 87, 93; Western Union Tel. Co. v. Stevenson, 128 Pa. 442, 454; Canfield v. Johnson, 144 Pa. 61, 76. In the last of these cases we said, "The rule that the best evidence of a fact must be produced . . . . requires that where two different grades or qualities of proof exist, that which is the best shall be adduced, if practical; as, for instance, the contents of a writing must be proven by the production of the writing, before secondary evidence can be given. But that rule has no application to a choice between witnesses, where both have legitimate knowledge of the subject matter of the inquiry. Some may have a better knowledge than others, but that will not exclude the knowledge of those who are the less informed, if it is otherwise compe-

tent. It is for the jury to judge of the sufficiency of the proof . . . . The proof offered by the expert testimony of Mr. Douglass was entirely legitimate and should have been received. He had a competent experience to qualify him for proving the probable cost of building . . . . the monument, . . . . and therefore he was a competent witness for that purpose." "Evidence is not considered secondary where it carries with it no indication that better remains behind:" Cutbush v. Gilbert, 4 S. & R. 550, 555. Ordinarily receipts and vouchers are not primary evidence: Townsend v. Kerns, 2 Watts, 180, 182; therefore, indefinite "written data" of the cost of construction and maintenance of a water company's works, assumed by a court, as in this case, to be in the possession of the defendant company, would not be proof of the first order when offered by the defendant, unless brought within the principal of "memoranda made in the usual course of business and under circumstances where they cannot be supposed to be fabricated:" Ganzer v. Fricke, 57 Pa. 316, 318. While a court might feel that a higher class of evidence probably exists than that offered, it cannot refuse the latter unless it carries with it the indication that better remains behind.

At the trial of the present case, the actual records of the defendant company might have been convincing proofs, but they could not be held to be the only competent evidence to sustain the affirmative of the issue that the cost of the defendant's plant was so great as far to exceed the borrowing capacity of the city; and that was the contention sought to be sustained by the testimony offered. The inquiry was not so much to ascertain the actual cost of the plant which the plaintiff would have to pay if it should become the purchaser thereof, but to determine if the city was in a financial position reasonably to entitle it to compel the defendant to submit to an investigation of its records and properties. If the evidence plainly showed that the cost of certain real estate recently acquired by the defendant, as a necessary part of its plant, actually exceeded the borrowing capacity of the city, that such real

estate represented but small part of the cost value of the whole plant, and that the defendant's other properties, according to the testimony of expert witnesses, totaled a value that would cost many times the amount which the city could raise under the law, then the plaintiff was not in a position to make the purchase, and hence it was not entitled to a mandamus to force the water company to submit to an investigation of its books and properties.

But in a case where it could be shown that the probable price which would have to be paid for the defendant's property and the borrowing capacity of the plaintiff city approximated one another, the mandamus would issue to enable the plaintiff to make its investigations; and, as before stated, after securing sufficient knowledge to qualify it to submit an intelligent offer, in accordance with the act of 1874, if that offer should be refused, the plaintiff could demand another mandamus to compel the water company to convey its plant to the city upon payment of the estimated price; the water company could then take issue on the figures submitted by the city, and there would be a common-law trial to adjudge the issues thus raised.

While it is true that paragraph V, of sec. 13, of the Act of June 16, 1836, P. L. 784, gives to the courts "the supervision and control of all corporations other than those of a municipal character," this has never been construed to mean that the ordinary and adequate remedies at law are superseded by equity as against such corporations. Jenkins v. Baxter, 160 Pa. 199, and Bedford Springs Co. v. McMeen, 161 Pa. 639, are authorities for the rule that where there is an appropriate remedy at law against a corporation, even though equitable jurisdiction has been invoked, the bill will be dismissed; also see Brower v. Kantner, 190 Pa. 182.

Since at the time of the enactment of the act of 1874 a complete system of law adequate for the adjustment of the rights of all parties was present in the old mandamus act of 1836, and as such a system is still available under the Acts of 1893 and March 19, 1903, P. L. 32, equity had no

jurisdiction, and the decree of the court below must be set aside.

Under no circumstances would the defendant company be bound to render to the city "a detailed and itemized statement" as ordered in the decree here entered; for we cannot agree with the view of the court below that the act of 1874 places upon the defendant corporation "the obligation to at all times be ready, when called upon by the City, to furnish to the City the net cost of construction and maintenance of its works and property . . . ." The act of assembly simply provides that "it shall be lawful . . . . for the . . . . city . . . . to become the owner of said work . . . . by paying therefor the net costs of erecting and maintaining the same, etc." While we agree that this is sufficient to give the city such a special interest that under proper circumstances it would have the right to investigate the books and plant of the defendant, and that such an investigation would not constitute "an unreasonable search," we see nothing in the statute which would compel the defendant company to assume that the city was going to exercise its right to purchase, or would fix the company with the onerous obligation of being constantly obliged, upon call, to furnish at its own expense such a statement as indicated in the decree entered by the court below.

It is not requisite to the decision of this case to discuss the various questions argued by counsel concerning the legal rights of the two water companies, under the peculiar facts relevant to their charter powers, to supply water beyond the borders of Williamsport, or of the city to acquire and operate the property of these companies outside of its limits and to supply the inhabitants of territory other than its own. If necessary all of these points can be decided in due time and in a proper proceeding. In that connection, for the present we go no further than to decide that the plaintiff, as a municipality in which the defendant company is located, has a prima facie right to acquire the works and property of such company on the

terms fixed in the act of 1874. Whether or not the facts peculiar to this case, when properly determined, will show that this particular company is not within the purview of the act, or that for any reason the city is not in a position to insist upon the rights given to municipalities under the statute, we do not now decide, or indicate any view. The court below made no findings in respect to the amount of the available borrowing capacity of the city, or the probable value of the defendant's property, and while we will not prejudge either of these points, we do not refrain from saying that the testimony introduced indicates a strong probability of a lack of sufficient borrowing capacity, and that it will likely take years before this plaintiff will be in a financial position to acquire the works and property of the two water companies. In the meantime the development in the statutory law may eliminate as live issues between the parties all of the questions referred to at the beginning of this paragraph.

Section 3 of the Act of June 7, 1907, P. L. 440, provides: "If upon an appeal, after a decision upon the merits, the question whether the suit should have been brought at law is . . . . specifically raised by the defendant's assignments of error . . . . and the decision of the appellate court is that the suit should have been brought at law, it shall remit the cause to the court below, with directions to transfer it to the law side of that court, all costs in the cause to abide the final determination thereof in the court of law." Instances may arise in the application of this act where it will be open to attack as an attempt indirectly to confer jurisdiction not theretofore existing (Park Bros. & Co. v. Oil City Boiler Works, 204 Pa. 453, 457); but we do not now pass upon that question or determine any other point in connection with the act. We acquiesce (Com. ex rel. v. Commissioners, 37 Pa. 237, 239) in the statute so far as its words apply to the facts of this case; for here the defendant is a corporation, and the service required by the equity rules (Rule 10), and presumably made in compliance therewith, was "in the mode pre-

scribed by law for the service of a writ of summons upon such corporation," which is consistent with the mode prescribed in sec. 5 of the Act of 1893, supra, for the service of a writ of alternative mandamus; therefore, there can be no objection to holding the defendant in court. When the record is remitted the court below can make such appropriate orders to speed a determination of the cause as may be just and proper within the law.

Out of regard for the desire of the plaintiff city to take over as a whole the properties of both of the water companies at one and the same time, this appeal and that of the Williamsport Water Company were argued together by agreement of counsel, and, as like questions were involved in each, both appeals were treated as one. We have considered this case from that point of view.

The first, second, third and twenty-fifth assignments of error are sustained, the decree is set aside, and the record is remitted with directions to transfer the cause to the law side of the court; all costs to abide the final determination thereof in the court below.

Mr. Justice Potter, dissenting:

The object of this proceeding is to compel a conveyance of property under the terms of the statute. This involved an accounting in order to determine the value of the property and the amount to be paid therefor. The case is one in which the services of a chancellor are peculiarly appropriate and desirable, in order to dispose of the questions involved, justly and equitably to all parties concerned. Any remedy that may be attempted upon the law side of the court will be uncertain, inconvenient and inadequate.

I would sustain the jurisdiction in equity.

Mr. Justice Mestrezat joins in the dissent.